**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-3558
_____

RITE AID NEW JERSEY, INC.,
                                  Appellant
v.

UNITED FOOD COMMERCIAL WORKERS UNION, LOCAL 1360
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-10-cv-00510)
District Judge:  The Honorable Joseph H. Rodriguez
_____

Submitted Under Third Circuit LAR 34.1(a)
May 27, 2011

BEFORE:  FUENTES, FISHER, and NYGAARD, Circuit Judges.

(Opinion Filed:  October 26, 2011)
_____

OPINION OF THE COURT
_____

NYGAARD, Circuit Judge.

    Rite Aid appeals the District Court's decision to deny its petition to vacate the

arbitration award entered against it and in favor of the United Food Commercial Workers

Union, Local 1360.  We will affirm.


I.

Because we write solely for the benefit of the parties, we will only briefly recite the essential facts. As they do in other states, Rite Aid operates a chain of drug stores in New Jersey. *See, e.g., Rite Aid of Pennsylvania, Inc. v. United Food and Commercial Workers Union, Local 1776*, 595 F.3d 128, 130 (3d Cir. 2010). The Union represents nonmanagerial employees in Rite Aid's stores. In June of 2007, Rite Aid acquired the Brooks Eckerd chain of drug stores and re-branded them as Rite Aid stores. As a result of this acquisition, some Rite Aid stores that were in close proximity to Eckerd stores were closed. Likewise, some Eckerd stores were closed in favor of existing Rite Aid locations. Neither party disputes that Rite Aid utilized sound business practices and legitimate reasons in determining which stores would close. Relevant to this appeal are six instances where re-branded Eckerd stores remained open, retaining their full complement of employees. The six Rite Aid locations that were closed were staffed by Union employees. The former Eckerd employees were not members of the Union.

A dispute quickly arose as to whether these Eckerd stores were "replacement stores" within the meaning of the parties' collective bargaining agreement and whether the Union was entitled to have the CBA apply to the acquired Eckerd stores. [1] The

---

[1] The Collective Bargaining Agreement provides: "1.1 The Employer recognizes the Union as the exclusive representative of all associates except only store managers, assistance managers, loss prevention agents, pharmacists, and pharmacy interns in its drugstores currently covered under the agreement between UFCW Local 1360 and Rite Aid of New Jersey, Inc., . . . or any replacement stores, and to include all stores added to the Union via NLRB elections or other demonstration of the Union status acceptable to the Employer under the jurisdiction of the United Food & Commercial Workers, Local 1360, now or hereafter owned and/or operated by the Employer ."

parties followed the grievance process outlined in their CBA, which culminated in three days of arbitration hearings. The jointly selected arbitrator issued an opinion and award in which he found that the Eckerd stores were "replacement stores" under the CBA and that Rite Aid violated the agreement in failing to recognize these newly-acquired Eckerd stores as such. The arbitrator further determined that "[t]he Rite Aid employees at the closed Rite Aid stores had the right to follow their work to the former Eckerd stores that replaced the closed Rite Aid stores."

Rite Aid filed a petition in the District Court seeking to vacate the arbitrator's award, arguing that the arbitrator's decision manifestly disregarded the applicable law by imposing an award on the parties that required Rite Aid to apply the CBA to the former Eckerd stores, absent a showing of interest in or majority support for the Union. Rite Aid also claimed that the arbitrator's decision and award required it to discriminate against nonunion employees. After briefing and a hearing, the District Court confirmed the arbitrator's decision and award, finding that it "draws its essence from the CBA and is not reflective of the arbitrator's 'own brand of justice.'" Rite Aid timely appealed.

II.

The Federal Arbitration Act provides only four grounds upon which arbitral awards may be vacated, 9 U.S.C. § 10(a) (2006), and those grounds are to be exclusive. *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576 (2008).[2] Rite Aid does not challenge

---

[2] 9 U.S.C. § 10(a) reads in full:
(a) In any of the following cases the United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration:

3

the arbitrator's decision on any of these grounds, relying instead upon additional grounds

that permit vacatur in exceptional cases—public policy violations and manifest disregard

of the law. *See Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d Cir. 2003) ("the judicially

created 'manifest disregard of the law' standard allows a district court to vacate an

arbitration award"); *Local 863 Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen &*

*Helpers of Am. v. Jersey Coast Egg Producers, Inc.,* 773 F.2d 530, 533 (3d Cir. 1985)

("An award may be set aside only in limited circumstances, for example, where the

arbitrator's decision evidences manifest disregard for the law rather than an erroneous

interpretation of the law." (citing *Wilko v. Swan*, 346 U.S. 427, 436  (1953)).

Reviewing the Arbitrator's decision, the District Court concluded that, in light of

the extremely deferential standard of review:

> the Court finds sound the arbitrator's decision that the re-
> branded Eckerd stores constituted "replacement stores" under
> the terms of the Collective Bargaining Agreement.  The
> arbitrator considered the NLRB decisions *Rock Bottom*
> *Stores, Inc*., 312 NLRB 400 (1993) and *Harte & Company,*
> *Inc*., 278 NLRB 947 (1986) but found them inapplicable to
> the instant case, which is governed by the CBA.  Looking to

> (1) where the award was procured by corruption, fraud, or
> undue means;
> (2) where there was evident partiality or corruption in the
> arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in
> refusing to postpone the hearing, upon sufficient cause
> shown, or in refusing to hear evidence pertinent and material
> to the controversy; or of any other misbehavior by which the
> rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so
> imperfectly executed them that a mutual, final, and definite
> award upon the subject matter submitted was not made.

the language of the CBA itself, in conjunction with the testimony presented, the arbitrator found that the Agreement between the parties was 'violated when [Rite Aid] failed to recognize the above-referenced former Eckerd stores as 'replacement stores' under the terms of the CBA. That decision draws its essence from the CBA, and is not reflective of the arbitrator's 'own brand of industrial justice." *CITGO*, 385 F.3d 809, 816 (3d Cir. 2004) (quoting *Misco*, 484 U.S. at 36).

We agree with the District Court. Here, the arbitrator was asked to decide a discrete issue: whether the Eckerd-turned-Rite Aid stores were "replacement stores" within the meaning of the CBA. The arbitrator heard testimony over three days and considered numerous exhibits, testimony and briefs filed by the parties. Then, the arbitrator issued a thirty-three page opinion which related in detail his findings as to the evidence and his resolution of the arguments raised by Rite Aid and the Union. The arbitrator found that the Rite Aid stores under review were "replacement stores" as that term was defined under the CBA. Put another way, the arbitrator answered "yes" to the question before him and specifically acknowledged the limited nature of his ruling: "[a]ccordingly, this Opinion and Award is limited to a finding that the agreement was violated when the Employer failed to recognize the above-referenced former Eckerd stores as "replacement stores" under the terms of the agreement."

### III.

Rite Aid appeals the District Court's confirmation of the arbitrator's decision arguing that the arbitrator's decision violates public policy because it grants recognition to a minority union. Rite Aid's argument is meritless.

5

Assuming, post- *Hall Street*, that an "[a]rbitration award . . . can be vacated when such awards violate public policy," or exhibit "manifest disregard for the law," there was no such violation here. *See, e.g., United Transp. Union Local 1589 v. Suburban Transit Corp.*, 51 F.3d 376, 381 (3d Cir. 1995).[3] Rite Aid argues that vacatur is appropriate because the Arbitrator's decision ran afoul of public interests, namely provisions of the National Labor Relations Act that prohibit the imposition of a minority union on an unwilling workforce and prohibit the coercion of employees to engage in collective bargaining. The problem, however, is that the Arbitration award does no such thing. Rite Aid's argument is premature speculation.

When the Arbitrator decided the discrete issue before him, he indicated that the question of a proper remedy would not be decided until a later date:

> The question of remedy is now before the bar. When this Arbitrator was notified of his selection to serve as impartial arbitrator the selection letter specified that the subject matter was Violation of Recognition Clause Replacement Stores & Eckerd Stores, Case Number: 081127-00781-1. This Arbitrator was further advised that the selection involved a hearing and decision in both cases. The selection letter further stated, "[w]hile the issues are somewhat related, the parties have elected to bifurcate the two matters and have them heard separately, albeit by one arbitrator. Accordingly, there is another hearing scheduled in this "matter" for March 25, 2010.

---

[3] We have not addressed the question of whether manifest disregard of the law remains a valid ground for vacating an arbitration award under the FAA, in light of the Supreme Court's decision in *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576 (2008). Rite Aid's argument does not rest on a manifest disregard for the law as much as it does a violation of public policy.

6

Rite Aid has no disagreement with the arbitrator's determination that the stores at issue here were "replacement stores" within the meaning of the CBA. It challenges only the results of that determination – results which may, or may not, flow from the arbitrator's decision and may, or may not, be the subject of further arbitration, as the arbitrator anticipated. The arbitrator's award is clear: the stores in question were replacement stores, and the displaced employees should have been given the opportunity to follow their work to those replacement stores as provided for by the CBA.

It is, of course, dictum in that last portion of the award that Rite Aid focuses on – the arbitrator's comment that the former union employees at the Eckerd Stores had a right to follow their work to the replacement stores. Rite Aid maintains that this comment requires recognition of the Union as the bargaining representative for the former Eckerd employees. It does not. The arbitrator merely answered the question presented, finding the stores in question to be replacement stores under the CBA. Rite Aid implies that the arbitrator went further to rule on the consequences of his award, but he did not. Concluding that these stores were replacement stores, the arbitrator found the CBA to apply and did not address the consequences of that decision. The arbitration award was within the terms of the submission and drew its essence from the terms of the CBA. *See United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 38 (1987)

IV.

The parties to this case agreed to settle their disputes through arbitration. The arbitration award is based on the arbitrator's interpretation of the CBA and factual record, and Rite Aid has not shown that the arbitrator's award violates public policy or was a

7

manifest disregard for the law. Accordingly, we will affirm the District Court's decision to deny Rite Aid's petition to vacate the arbitration award.