**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF JUSTICE, Plaintiff**

**v.**

**UNITED INDUSTRIAL, SERVICE TRANSPORTATION, PROFESSIONAL AND GOVERNMENT WORKERS OF NORTH AMERICA SEAFARERS INTERNATIONAL UNION, Defendant**

**UNITED INDUSTRIAL, SERVICE TRANSPORTATION, PROFESSIONAL AND GOVERNMENT WORKERS OF NORTH AMERICA SEAFARERS INTERNATIONAL UNION, on behalf of Ernest Bason, Esq., Plaintiff**

**v.**

**GOVERNMENT OF THE VIRGIN ISLANDS, DEPARTMENT OF JUSTICE, Defendant**

Case Nos. ST-11-CV-308, ST-11-CV-364

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

December 12, 2011

440

441

PEDRO K. WILLIAMS, ESQ., St. Thomas, USVI, *Attorney for the United Industrial, Service Transportation, Professional and Government Workers of North America Seafarers International Union.*

ROBERT A. MOLLOY, ESQ., Assistant Attorney General-Labor, Office of Collective Bargaining, St. Croix, USVI.

CHRISTIAN, *Judge.*

## MEMORANDUM OPINION

(December 12, 2011)

These consolidated cases are before the Court for final disposition. The first matter, Case No. ST-11-CV-308 ("Case No. 308"), was filed by the Government of the Virgin Islands ("Government") against the United Industrial, Service, Transportation, Professional, and Government Workers of North America Seafarers International Union ("Union"), seeking to vacate an arbitrator's award issued in favor of grievant Ernest F. Bason, Esquire. The second case, Case No. ST-11-CV-364 ("Case No. 364"), is an action brought by the Union against the Government to confirm the same arbitrator's award. After reviewing the

record, the law, and the arguments of the parties, the Court determines that only a portion of the arbitration award should be vacated. The remainder of the award will be confirmed.

## I. FACTUAL AND PROCEDURAL BACKGROUND.

On February 24, 1997, Ernest F. Bason, Esquire ("Attorney Bason") commenced his service with the Virgin Islands Department of Justice, Office of the Attorney General, as an assistant attorney general.[1] Attorney Bason was specially admitted to practice law in Virgin Islands courts in that capacity based on his license to practice law in the State of New York.[2] He worked as an assistant attorney general for the next thirteen (13) years, with the exception of a brief stint as a legal counsel in the Virgin Islands Police Department.[3]

On July 1, 2010, Vincent F. Frazer, Esquire, Attorney General of the Virgin Islands, issued a letter addressed to Attorney Bason, which was copied to Dr. Valdemar Hill, the Chief Negotiator within the Office of Collective Bargaining, and Mr. Eugene Irish, Vice President of the Union.[4] In the letter, Attorney General Frazer suspended Attorney Bason, effective July 26, 2010,[5] advised that a recommendation of termination would be transmitted to the Governor of the Virgin Islands, and reduced his pay by fifty percent (50%). As of the date of said letter, there was in effect a collective bargaining agreement ("CBA") between the Government and the Union which covered assistant attorneys general.[6]

It is not clear when the recommendation of termination was transmitted to the Governor, or the contents of said recommendation. However, by letter dated July 23, 2010, to Attorney Bason Governor John P. de Jongh, Jr. terminated him based on the recommendation of the Attorney

---

[1] *See*, Notice of Personnel Action attached to the Union's Informative Motion dated August 11, 2011, and Exhibit No. 1 attached to the Government's Notice of Filing dated August 22, 2011 at ¶ 1.

[2] Testimony of Attorney Bason at the hearing of July 28, 2011.

[3] Testimony of Attorney Bason at the hearing of July 28, 2011.

[4] Joint Record of Arbitration Proceedings ("JR") at 47-48.

[5] Although the letter does not so expressly state, it appears that the effective date was set at July 26, 2010 because Attorney Bason already was serving a suspension which was set to expire on July 25, 2010. *See*, JR at 46.

[6] JR at 1-41 and 179-219.

General.[7] This missive was copied to the same persons as the July 1, 2010 letter of the Attorney General, as well as the Attorney General and Kenneth L. Hermon, the Director of the Division of Personnel. By letter dated August 4, 2010 addressed to the Attorney General, the Union filed Grievance No. 029-10, protesting Attorney Bason's suspension set forth in the July 1, 2010 correspondence.[8] On August 10, 2010, Attorney General Frazer responded to the Union notifying it that he considered the grievance to be untimely and declining any further discussion of the matter.[9] The Union replied, by letter dated August 25, 2010, that it was withdrawing Grievance No. 029-10, and amending previously-filed Grievance No. 022-10 to address Attorney Bason's termination via the Governor's July 23, 2010 letter.[10]

On August 25, 2010, the Union also notified the Government of its filing of Grievance No. 033-10, disputing the termination of Attorney Bason.[11] This correspondence indicated that Governor de Jongh's July 23, 2010, letter of termination was not received by the Union until August 16, 2010. In response, on September 2, 2010, the Attorney General wrote to the Union, asserting that this grievance also was untimely in relation to the Attorney General's July 1, 2010 communique.[12] On September 8, 2010, the Union demanded arbitration of Grievance No. 033-10.[13]

The Government moved to dismiss the arbitration proceeding, contending that the grievance filed by the Union was untimely.[14] The arbitrator, George R. Shea, Jr., issued an interim Award Summary dated January 2, 2011, finding that the discharge grievance was timely filed and denying the Government's motion.[15] After hearing the matter on the merits on February 9 and 10, 2011, the arbitrator issued a final award on April 29, 2011.[16] Therein, he reiterated that the Union's grievance of

---

[7] JR at 49.
[8] JR at 54-55.
[9] JR at 56.
[10] JR at 57.
[11] JR at 50-51.
[12] JR at 52.
[13] JR at 53.
[14] JR at 174.
[15] JR at 363-366.
[16] JR at 367-384.

Attorney Bason's termination was timely. He also found in favor of the Union, and directed the Government to immediately reinstate Attorney Bason and restore all of his employment benefits, retroactive to July 1, 2010. He also awarded Attorney Bason back pay effective June 7, 2010, the date of another letter of suspension issued by the Attorney General.

On May 9, 2011, the Government commenced Case No. 308 by filing a five-count complaint requesting that the Superior Court vacate the arbitrator's award. The Union has moved to dismiss that action. On June 7, 2011, the Union filed Case No. 364 to confirm the same arbitration award. The Government filed a multi-count counterclaim to the Union's action. On June 30, 2011, the Union filed a motion to consolidate the two cases. The Court orally granted said motion at a hearing held on July 28, 2011, and reduced the decision to writing by Order dated August 1, 2011. On July 28, 2011, the Court also heard arguments on the Union's two motions for partial summary judgment and its motion for expedited hearing. By Memorandum Opinion and Order dated August 1, 2011, the Court treated all three of the Union's motions as one request for preliminary injunction and denied the same.[17]

At this time, presently before the Court are the Union's motion to dismiss and motion for summary judgment in Case No. 308, and motion to confirm the arbitration award in both cases. Also, before the Court are the Government's and Union's motions for summary judgment in both cases seeking a complete vacatur of Arbitrator Shea's award.[18] The parties have opposed each other's motions. For the reasons set forth below, the Court will vacate a portion of the arbitration award, and affirm the remainder of said award.

## II. LEGAL ANALYSIS.

### a. Jurisdiction of the Superior Court over actions to vacate or confirm an arbitration award.

■ The Superior Court of the Virgin Islands has jurisdiction to hear requests to confirm or vacate an arbitrator's award under the provisions of

---

[17] *Government v. United Indus., Serv., Transp., Prof'l and Gov't Workers of N. Am. Seafarers Int'l Union*, No. ST-11-CV-308, 2011 V.I. LEXIS 44 (V.I. Super. Ct. Aug. 1, 2011).

[18] Also before the Court are motions to strike filed by both panics, as well as the Union's motion for expedited decision. The Court will dispose of these motions via a separate order of even date.

the Federal Arbitration Act (the "FAA" or the "Act").[19] In reaching this conclusion, the United States Court of Appeals for the Third Circuit ("Third Circuit") noted that the substantive law of the Virgin Islands includes the judicial remedy of "enforcing an arbitration award" as embodied in the Restatements of Law, which have been adopted by the Virgin Islands Code.[20] Generally, actions to vacate an arbitration award are governed by Section 10 of the FAA, while requests to enforce an arbitration award fall within the parameters of Section 9 of the FAA.[21] Under Third Circuit precedent, both of these FAA sections apply substantively to proceedings in this Court,[22] which is bound by the authority of the Third Circuit unless otherwise directed by the Supreme Court of the Virgin Islands.[23]

A party has one year within which it must move an appropriate court to enforce an arbitration agreement.[24] Conversely, a party seeking to vacate an arbitration award is obliged to serve notice of its application on the adversary within three months after it is rendered.[25] The decision of the arbitrator underlying these cases was issued on April 29, 2011. The Government served its verified complaint seeking a vacatur of the award, which the Court will treat as the requisite motion under Section 12 of the FAA, on May 11, 2011, and the Union filed its action seeking enforcement of the arbitration award on June 7, 2011. Both requests were timely filed, and served, and are properly before this Court. While the Court's discussion below focuses mainly on the Government's request to vacate the arbitrator's award, as it was filed prior to the Union's action to enforce the arbitrator's award, this discussion will dispose of the Union's position as well. The Court is mindful that the FAA requires confirmation of an

---

[19] *Government v. United Indus. Workers, N.A.*, 169 F.3d 172, 175-178, 40 V.I. 489 (3d Cir. 1999).

[20] *Id.* (citing V.I. CODE ANN. tit. 1, § 4 and RESTATEMENT (SECOND) OF CONTRACTS § 345(f)).

[21] U.S.C. §§ 9, 10.

[22] *Government v. United Indus. Workers, N.A.*, 169 F.3d at 178 n. 9.

[23] *In re People*, 51 V.I. 374, 389 n. 9 (V.I. 2009).

[24] U.S.C. § 9.

[25] U.S.C. § 12.

arbitration award, upon proper application, unless there is a basis to vacate or modify it under Sections 10 or 11 of the Act.[26]

### b. Standard of review on the Government's request to vacate the arbitrator's award and the Union's motion to confirm the same.

The Government seeks to vacate the arbitrator's award and a declaratory judgment that the Government is not bound by the decision of the arbitrator to reinstate Attorney Bason. The provisions of Section 10(a) of the FAA constitute the exclusive bases on which an arbitration award may be vacated.[27] In their complaint, the Government alleged that the arbitration award should be vacated on the following grounds: (1) the arbitrator failed to draw the essence of his decision from the CBA; (2) the arbitrator's award is in violation of public policy; (3) the arbitrator exceeded his powers; and (4) the arbitrator ignored the plain language of the CBA. The Government also requested a declaratory judgment that the Government is not bound by the arbitrator's decision. However, the Government synthesizes these five claims into two discrete contentions in its motion for summary judgment and opposition to the Union's motion to confirm the arbitration award. First, the Government claims that the arbitrator exceeded his authority when he ruled that the Union's grievance was timely filed. Second, the Government contends that the arbitrator's decision to reinstate Attorney Bason violates the public policy that assistant attorneys general can be fired by the Governor without cause.

█ The Third Circuit succinctly stated the standard under which courts must review an arbitrator's decision.

> The United States Supreme Court has consistently held that courts exercise a narrow and deferential role in reviewing arbitration awards arising from labor disputes. The rationale for this limited role is to encourage the arbitration of labor disputes and not undermine them by excessive court intervention on the merits of an award. In light of this policy of encouraging arbitration awards, there is a strong presumption in their favor. The court must uphold an award that "draws its

---

[26] U.S.C. § 9.

[27] *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582-584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).

essence from the collective bargaining agreement." An award draws its essence from a collective bargaining agreement if "its interpretation can *in any rational way* be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention." Thus, we should not vacate an award simply because we would have reached the opposite conclusion had we been the original arbitrator. Rather, an award should only be vacated if there is no support in the record for the arbitrator's determination or if the arbitrator demonstrates a manifest disregard for the agreement entirely unsupported by principles of contract construction.[28]

◼ Applying this standard to the Government's and Union's motions for summary judgment, the arbitrator's factual decisions must be upheld ". . . unless they are rebutted by a clear preponderance of the evidence."[29] In the context of reviewing an arbitration award, the only areas in which there are potentially legitimate factual questions are whether: 1) the issues resolved were properly subject to arbitration; and 2) the award's essence grows out of the collective bargaining agreement.[30] The arbitrator's legal determinations are reviewed de novo.[31]

◼ Notwithstanding the deference to be accorded to an arbitration award, a trial court is not to simply "rubber stamp" an arbitrator's decisions.[32] An arbitrator exceeds his authority when he renders a decision that is outside of the scope of parties' submission.[33] Therefore, while " '[i]t is the responsibility of the arbitrator in the first instance to

---

[28] *Accuride Erie, L.P. v. Int'l Union, Auto., Aerospace & Agric. Implement Workers of Am., Local Union 1186*, 257 Fed. Appx. 574, 578 (3rd Cir. 2007) (all citations omitted).

[29] *Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc.*, 444 Fed. Appx. 571, 573-74 (3d Cir. 2011) (quoting *Crown Cork & Seal Co., Inc. v. Cent. States Se. and Sw. Areas Pension Fund*, 982 F.2d 857, 860 (3d Cir. 1992)).

[30] *Int'l Ass'n of Machinists and Aerospace Workers, Dist. 776 v. Texas Steel Co.*, 538 F.2d 1116, 1119 (5th Cir. 1976).

[31] Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc., 444 Fed. Appx. at 573-74.

[32] *Metromedia Energy, Inc. v. Enserch Energy Servs., Inc.*, 409 F.3d 574, 579 (3d Cir. 2005) (quoting *Matteson v. Ryder Sys. Inc.*, 99 F. 3d 108, 113 (3d Cir. 1996)).

[33] *Id.*

interpret the scope of the parties' submission . . . it is within the courts' province to review an arbitrator's interpretation.' "[34]

### c. The arbitrator did not err in concluding that the Union's termination grievance was timely filed, but erred in awarding Attorney Bason relief prior to July 23, 2010.

In its first assignment of error, the Government contends that the arbitrator wrongly concluded that the Union's grievance was filed within the limitations period of the CBA. In its argument that the grievance was untimely, the Government posits that the arbitrator's decision does not draw its essence from the CBA, and, consequently, he exceeded his authority.[35] The Government suggests that the arbitrator's decision was not consistent with Article X, Section 4 of the CBA. This provision provides, in pertinent part, "Within the ten (10) working days after an occurrence or after the employee knew or should have known of an occurrence, the matter shall be reduced to writing and presented to the immediate supervisor." According to the Government, the "occurrence" which triggered the ten (10) working day period for the filing of a grievance commenced on July 1, 2010 — the date of Attorney General Frazer's letter which expressed his intention to recommend Attorney Bason's termination to the Governor. The Government argues that the grievance was not filed until August 4, 2010, challenging the Governor's letter terminating Attorney Bason, and that there is no provision in the CBA which authorizes such a grievance.

The Union counters that the grievance regarding the Governor's termination letter was timely filed. The Governor's termination letter was received by the Union, according to it, on August 16, 2010, and the grievance was filed on August 25, 2010. If this is correct, then the grievance was filed within the time limits set in the CBA.

In his decision, the arbitrator noted that the CBA clearly provided that a grievance contesting an employer's action must be filed within ten (10) working days of the occurrence of the grieved action or when the grievant first knew of the alleged contractual violation. The arbitrator further noted that the agreement provided that, if the grievant or the Union failed to

---

[34] *Id.*
[35] *See*, 9 U.S.C. § 10(a)(4).

adhere to this time limit without a written waiver of the time limits by the Government, the grievance would be deemed disposed of on the last response of the Government. The arbitrator construed the plain language of the applicable CBA sections in manner that draws its essence therefrom.

The arbitrator determined that, in the contractual environment created by Article XIX of the Agreement, the termination of the grievant's employment was a continuum of events. He found that this continuum commenced with the Attorney General's July 1, 2010, notification to Attorney Bason of his intent to recommend to the Governor the termination of the grievant's employment, and ended with the Governor's July 23, 2010 approval of that recommendation. The arbitrator further determined that while the CBA provided the grievant with the opportunity to contractually challenge the Attorney General's recommendation by filing a grievance, such opportunity did not usurp the grievant or the Union's right to file a grievance pursuant to Article X on the final element of the continuum effectuating the recommended termination of the grievant's employment. The arbitrator noted that the tolling of the period for filing a grievance on either of these actions commenced upon the grievant's receipt of the related notifications of those events. He reasoned that to find otherwise would reduce the Governor's review of the Attorney General's recommendation to a mere formality.

However, of concern to the Court is that neither the parties nor the arbitrator properly addressed the fact that the July 1, 2010 letter of the Attorney General and the July 23, 2011 letter of the Governor were the subject of two separate grievances and constituted two separate "occurrences" under the CBA. In the Grievance No. 029-10, the Union sought to grieve the recommendation of termination, Attorney Bason's suspension, and the concomitant fifty percent (50%) pay cut effective July 26, 2010. However, this grievance was withdrawn by the Union, and could not have been before the arbitrator.[36] Arbitrator Shea specifically stated that the July 1, 2010 suspension was not before him.[37] The only matter before the Arbitrator Shea was Grievance No. 033-10, which challenged only Attorney Bason's termination of July 23, 2010.

---

[36] JR at 57.

[37] JR at 375.

■ Nevertheless, the decision of the arbitrator included reinstatement of Attorney Bason with all benefits back to July 1, 2010, as well as back pay retroactive to June 7, 2010. The apparent reason for these remedies was to address the suspension and pay cut set forth in the July 1, 2010, as well as another suspension issued to Attorney Bason on June 7, 2010, which was to be effective June 25, 2010. The record presented to the Court does not reflect that the June 7, 2010 action was ever grieved by the Union. Thus, the Court cannot conclude that the June 7, 2010 matter properly was before the arbitrator in the underlying arbitration proceeding. The Court's conclusion also is premised upon the fact that the June 7, 2010 Attorney's General's letter is never mentioned in its 34-page brief to the Arbitrator Shea. Because the June 7 and July 1, 2010 actions of the Attorney General were not part of the submission to the arbitrator, he exceeded his authority in granting any relief based on those items. Therefore, the award must be vacated to the extent that it awards any relief to Attorney Bason prior to July 23, 2010.

■ However, as to the remainder of the award, taking the record as a whole, the Court finds the Government's arguments on the timeliness of the Grievance No. 033-10 to be unpersuasive. The facts found by the arbitrator to sustain his conclusion that the grievance was timely filed are: 1) the Attorney General issued a letter on July 1, 2010 advising Attorney Bason of the intention to recommend termination to the Governor; 2) the Governor issued a letter dated July 23, 2010 to Attorney Bason advising of his termination based on said recommendation; 3) that the Union received notice of the termination letter on August 16, 2010; and 4) the grievance was filed on August 25, 2010. Importantly, the arbitrator found that there was no evidence of when the Attorney General actually submitted his recommendation to the Governor, and, if so, the contents, or the evidence in support, of that recommendation.[38] The Government fails to point to any facts in the record which rebut by a clear preponderance of the evidence the facts found by the arbitrator.[39] Therefore, the Court is obliged to sustain these findings. Moreover, the conclusion that the triggering date for filing a grievance was receipt of notice by the Union is borne out by the plain language of the CBA which requires notice of

[38] JR at 378.

[39] See, Roofers Local No. 30 Combined Pension Fund v. D.A. Nolt, Inc., 444 Fed. Appx. at 573-74.

discharges to the employee, the Union, and the Shop Steward.[40] Because Attorney Bason and the Union did not receive a copy of the Attorney General's recommendation, the only notice of actual termination by the Employer, which is the Government,[41] to which they could respond was the July 23, 2010 letter from Governor de Jongh.

The Court also cannot conclude as a matter of law that the arbitrator exceeded his authority in this regard. His conclusion that the July 23, 2010 Governor's letter of termination could be grieved is a rational interpretation of the terms of the CBA.[42] The Attorney General, by letter to the Union dated September 2, 2010, indicated that any grievance regarding his letter recommending Attorney Bason's termination should have been filed by July 16, 2010. If the Attorney General was limited to simply recommending termination to the Governor, as is evidenced by the procedure utilized and his correspondence of record, it is anomalous to suggest that only the recommendation could be grieved and no grievance could be filed upon Attorney Bason's actual termination by Governor de Jongh under the CBA.

▉ Additionally, the arbitrator's conclusion that the Governor was the officer who actually had the authority to terminate Attorney Bason is supported by Virgin Islands case law.[43] The Government attempts to distinguish *Finch-Sheen* from this case because in that earlier litigation the Legislature expressly approved the collective bargaining agreement at issue, which is not the case herein. However, this factual difference does not change the Court's analysis. Nowhere in Title 24, Chapter 14, Virgin Islands Code is ratification by the Legislature required to make a collective bargaining agreement effective. The only caveat is that any appropriation terms contained in such agreements are not effective until

---

[40] CBA at Art. X, Section 6.A. The Court notes that nothing in the record indicates that the July 1, 2010 and September 2, 2010 letters of the Attorney General or the July 23, 2010 letter of the Governor were transmitted to the Shop Steward. Indeed, neither side identifies who was the Shop Steward for this Unit. However, the Court will not address the impact of this potential failure as it was not raised by the parties at the arbitration or in their written submissions to this Court.

[41] CBA at Preamble, Art. X, § 6. A (JR at 3, 18).

[42] *See, Accuride Erie, L.P. v. Int'l Union, Auto., Aerospace & Agric., Implement Workers of Am., Local Union 1186*, 257 Fed. Appx. at 578.

[43] *Finch-Sheen v. United Indus., Serv., Transp., Prof'l and Gov't Workers of N. Am. Seafarers Int'l Union*, 20 V.I. 125 (D.V.I. 1983) (holding that the Governor, not the Attorney General, has the authority to terminate assistant attorneys general).

an appropriation is actually made.[44] After reading the entire legislative action noted in *Finch-Sheen*, Act No. 4506, the Court concludes that its main purpose was to implement the financial terms of the pertinent agreement and give that agreement statutory status. Nothing in the *Finch-Sheen* opinion suggests that the agreement would be ineffective absent said ratification. Applying the standard of review enunciated by the Third Circuit in *Accuride Erie, L.P. v. Int'l Union, Auto., Aerospace & Agric, Implement Workers of Am.*, the Court concludes that the arbitrator did not err in deciding that the Union timely filed a grievance of Attorney Bason's termination. Therefore, said award will not be vacated on this ground.

### d. The arbitrator's decision to reinstate Attorney Bason is not contrary to Virgin Islands public policy.

■ As its second basis for vacatur of the arbitration award, the Government contends that the decision of the arbitrator to reinstate Attorney Bason is contrary to established Virgin Islands public policy. As noted above, the Supreme Court has held that Section 10(a) of the FAA contains the exclusive bases for vacating an arbitration award under the Act.[45] Public policy is not one of the express bases set out in Section 10(a) of the FAA, and this circumstance would appear to nullify the Government's instant argument if one strictly reads *Hall Street Assocs*. It is of note that the Third Circuit recently has questioned, though not decided, the continuing viability of the "public policy" and "manifest disregard for the law" judicially-created bases for vacating an arbitration award after *Hall Street Assocs*.[46] However, the Supreme Court, prior to *Hall Street Assocs.*, also expressly held that a court may not enforce a collective bargaining agreement in a manner which contravenes established public policy,[47] and the High Court has not abrogated this principle. In order to pay due respect to these two binding Supreme Court

---

[44] 24 V.I.C. § 374(h).

[45] *Hall Street Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582-584, 128 S. Ct. 1396, 170 L. Ed. 2d 254 (2008).

[46] *See, Rite Aid New Jersey, Inc. v. United Food Commercial Workers Union, Local 1360*, 449 Fed. Appx. 126, 129 n.3 (3rd Cir. 2011).

[47] *W.R. Grace and Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S. Ct. 2177, 76 L. Ed. 2d 298 (1983).

precedents, the Court will, as other courts have, construe the Government's present argument as an assertion that the arbitrator exceeded his powers, as set forth in Section 10(a)(4) of the FAA.[48] The public policy basis for overturning an arbitration award is a very narrow doctrine which allows a trial court to overturn an arbitration award only when it ". . . explicitly conflict[s] with well-defined, dominant public policy. A public policy is well-defined and dominant if it may be ascertained from law and legal precedent."[49] The onus of demonstrating the public policy violation rests on the party asserting doctrine.[50]

Herein, the Government posits that the arbitrator's reinstatement decision interferes with the authority of the Governor to terminate assistant attorneys general at will because they are exempt employees. The Government points to portions of the Virgin Islands Code and other acts which: 1) declare that exempt employees are not employees which may be represented by a collective bargaining unit,[51] and designate assistant attorneys general as exempt employees.[52] The Union counters by pointing to 24 V.I.C. §§ 19 and 66 for the proposition that government employees, including assistant attorneys general, have the right to engage in collective bargaining. The Union also cites to Act No. 4506 to support their argument that the Legislature has expressly recognized union contracts involving assistant attorneys general.

 The Court determines the legal authority cited by the Union to be inapposite. Section 66 of Title 24, Virgin Islands Code, establishes the right of private sector employees to engage in collective bargaining, and

---

[48] See, Johnson v. Gruma Corp., 614 F.3d 1062, 1069 (9th Cir. 2010) (". . . an arbitrator exceeds his powers when he . . . issues an award that violates a well-defined policy . . .") (applying California law); Med. Mktg. Int'l, Inc. v. Internazionale Medico Scientifica, S.R.L., No. CIV.A. 99-0380, 1999 U.S. Dist. LEXIS 7380, at *4 (E.D. La. May 17, 1999) ("Instances in which the arbitrators 'exceed their powers' may include violations of public policy. . .") (citations omitted).

[49] Stroehmann Bakeries, Inc. v. Local 776, Int'l Bhd. of Teamsters, 969 F.2d 1436, 1441 (3d Cir. 1992) (citation omitted).

[50] Local 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp., 196 F.3d 117, 125 (2d Cir. 1999) (citation omitted).

[51] 24 V.I.C. § 362(g)(2).

[52] Act No. 2443, 1969 V.I. Sess. Laws 97.

has no bearing on assistant attorneys general.[53] Similarly, employees of the Government are excluded from the definition of "employee" under the Virgin Islands Fair Labor Standards Act.[54] Therefore, Section 19 of Title 24 Virgin Islands Code also does not assist the Union's position. Finally, Act No. 4506 recognized and funded only a specific agreement which was in effect in 1982. It has no bearing on the current CBA or the construction thereof.

While the Government cites to applicable authority, the Court cannot agree with the conclusion that all assistant attorneys general are exempt employees. Under the Revised Organic Act of the Virgin Islands, a federal law which provides the framework for the Government, the Governor of the Virgin Islands has the authority to ". . . appoint, and shall remove, all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided in this or any other Act of Congress, or under the laws of the Virgin Islands. . . ."[55] Pursuant to this authority, the language providing that assistant attorneys general serve at the pleasure of the Governor was adopted in 1962, and codified in Title 3 of the Virgin Islands Code.[56]

But, in 1968 the Government promulgated its employee classification system. In 1969, via Act No. 2443, the Government listed a number of employment positions which are designated as exempt under this system. Contrary to the assertion of the Government in its brief, not all assistant attorneys general were exempted from the classified service. Rather, the exact language designates "Assistant Attorney General (First and Second)" as exempt employees. Based on the record, the Government never presented to the arbitrator any evidence that Attorney Bason was a First or Second Assistant Attorney General. The Government also failed to make that argument in its briefs to this Court, or to present a definition of those positions. The CBA itself declares that it covers "All Assistant Attorneys-General" and then lists several positions which it does not

---

[53] *See*, 24 V.I.C. § 62 (excluding "public employees" as defined in Title 24, Ch. 14, Virgin Islands Code, from definition of "employee" in Title 24, Ch. 3, Virgin Islands Code.).

[54] 24 V.I.C. § 2.

[55] Revised Organic Act of the Virgin Islands 1954, as amended, § 11, 48 U.S.C. § 1591, *reprinted in* V.I. CODE ANN., Historical Documents, Organic Acts, and U.S. Constitution at 134 (1995) (preceding V.I. CODE ANN. tit. 1) ("Revised Organic Act").

[56] 3 V.I.C. § 113(a).

cover.[57] Nowhere in the CBA is either a First or Second Assistant Attorney General enumerated or defined. Since the Government has not demonstrated that Attorney Bason is a First or Second Assistant Attorney General, it has not shown that he is an exempt employee. Accordingly, it has not established that the portion of the arbitrator's award reinstating Attorney Bason is a violation of Virgin Islands public policy.

 Because only First and Second Assistant Attorney General are expressly exempted under Title 3, Chapter 25, Virgin Islands Code, the remaining assistant attorneys general within the Department of Justice are employees within the meaning of 24 V.I.C. § 362(g), and may, and did, participate in the collective bargaining process. Because assistant attorneys general are public employees within the meaning of this section, the applicable policy is that which ". . . declares that the Government of the United States Virgin Islands shall fully accept the principle and procedure of collective bargaining and shall bargain in good faith with valid public employee organizations. . . ."[58] The Court also must remain true to the federal policy which encourages the enforcement of arbitration awards.[59] In this instance, in light of these forceful federal and territorial public polices, the Court cannot agree with the Government that the arbitrator's decision directing the reinstatement of Attorney Bason to the position of assistant attorney general should be vacated.

### e. The effect of pending Supreme Court proceedings on the reinstatement of Attorney Bason.

 The Government also contends that reinstatement of Attorney Bason to the position of assistant attorney general is against public policy because his special admission to practice law was suspended by the Supreme Court.[60] The Government takes the position that this Court cannot compel the Attorney General to make any statements in support of a request to reinstate Attorney Bason's special admission because he presently does not believe in counsel's ability to adequately practice law. The Government overlooks two important factors which undermine its argument.

---

[57] CBA Article 1, Section 1.

[58] 24 V.I.C. § 361.

[59] *Brentwood Med. Assocs. v. United Mine Workers of Am.*, 396 F.3d 237, 241 (3d Cir. 2005).

[60] *See, In re Application of Bason*, S. Ct. BA. No. 2010-0143, Order (V.I. Sept. 20, 2010).

First, the Government created this scenario itself. The Department of Justice, on September 15, 2010, requested that the Supreme Court rescind Attorney Bason's special admittance to practice law in Virgin Islands courts because he had been terminated. The Supreme Court granted this motion.[61] The Court finds the Government's action in this regard to be surreptitious because its motion did not advise the Supreme Court that Attorney Bason had exercised his right to file a grievance under the CBA, and the Union had demanded arbitration of the matter. Clearly, at the time it filed its motion with the Supreme Court the Government was aware that the termination was being contested, and that arbitration and/or legal proceedings would finally determine Attorney Bason's employment status. While only the Supreme Court can advise whether this additional information may have altered how it decided the Government's motion, the concealment of this pertinent information is very troubling to the undersigned.[62]

. Second, the Government need not move for Attorney Bason's reinstatement of his special admittance in the Supreme Court. This Court takes judicial notice[63] that on November 9, 2011, the Supreme Court issued an Order vacating its suspension of Attorney Bason *nunc pro tunc* to September 20, 2010, and advising him that his special admittance will expire by February 7, 2012, if he is not reinstated to the Department of Justice or employed by another agency of the Government.[64] In the Judgment to be issued contemporaneously with this opinion, Attorney Bason will be reinstated, which, it appears, would continue his special admittance without any need for the Attorney General to vouch for Attorney Bason. Of course, however, the Supreme Court will make the final determination of whether Attorney Bason may continue to practice law in the territory of the Virgin Islands.

---

[61] *Id.*

[62] The Court's concern grows out of the possibility that the failure to provide the Supreme Court with this information may have run afoul of the ethical rules applicable to the practice of law in the Virgin Islands. *See*, MODEL RULES OF PROF'L CONDUCT 3.3 Comment [3] ("There are circumstances where failure to make a disclosure is the equivalent of an affirmative misrepresentation."). Because the motion seeking Attorney Bason's suspension was filed in the Supreme Court, this Court is without jurisdiction to make any final determination in this regard.

[63] FED. R. EVID. 201.

[64] *See*, *In re Application of Bason*, S. Ct. BA. No. 2010-0143, Order (V.I. Nov. 9, 2011).

In light of these circumstances, the Court need not address whether it has the authority to direct the Attorney General to move for Attorney Bason's special admittance. However, the Court can, and will, direct the Government to notify the Supreme Court of Attorney Bason's reinstatement by a date certain and file proof of such notification in this case.

## III. CONCLUSION

 The Court determines that the arbitrator exceeded his authority to the extent that he awarded relief to Attorney Bason which covers any period prior to July 23, 2010. However, the Government has not demonstrated that the arbitrator exceeded his authority with respect to the remainder of the award. Moreover, there is no reason in the record on which the Court may properly decline to enforce the award, except for that portion detailed above. Therefore, the Court will confirm the immediate reinstatement of Ernest Bason, Esquire as an assistant attorney general with the Virgin Islands Department of Justice, Office of the Attorney General, with all benefits, seniority, and back pay retroactive to July 23, 2010. The Court also will direct the Government to advise the Supreme Court of Attorney Bason's reinstatement by a date certain. A judgment which disposes of the parties' respective motions consistent with this opinion will be entered herewith.[65]

---

[65] Because this opinion and accompanying judgment and order adequately set forth the status of the parties, the Court exercises its discretion to deny the Government's request for declaratory judgment. *See, Flavo-Rich v. Quinn*, 18 V.I. 530, 532 (D.V.I. 1981) ("The decision to entertain a declaratory action is within the discretion of the Court.") (citation omitted). Such relief is not necessary under the circumstances, and would not further the interests of justice.