**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1247
_____

UNITED INDUSTRIAL, SERVICE, TRANSPORTATION,
PROFESSIONAL AND GOVERNMENT WORKERS
OF NORTH AMERICA SEAFARERS INTERNATIONAL
UNION, ON BEHALF OF ERNEST BASON,

Petitioner

v.

GOVERNMENT OF THE VIRGIN ISLANDS
_____

On Writ of Certiorari to the Supreme Court
of the Virgin Islands
(V.I. S. Ct. Civ. No.: 2011-0115)
_____

Argued December 10, 2013

BEFORE: FISHER, COWEN AND NYGAARD,  Circuit
Judges

(Filed: August 25, 2014)

Namosha Boykin, Esq. (Argued)
Amos W. Carty, Esq.
Pedro K. Williams, Esq.
5212 Wimmelskafts Gade
St. Thomas, VI 00802

       Counsel for Petitioner

Joss N. Springette, Esq. (Argued)
Office of Collective Bargaining
3438 Kronprindsens Gade
Second Floor
St. Thomas, VI 00802

       Counsel for Respondent

Anthony Michael Ciolli, Esq.
Supreme Court of the Virgin Islands
P.O. Box 590
St. Thomas, VI  00804

       Counsel for Amicus Curiae

_____

OPINION
_____

COWEN, <u>Circuit Judge</u>.

      This matter comes before us on a petition for a writ of certiorari filed by the United Industrial, Service,

2

Transportation, Professional and Government Workers of North America Seafarers International Union ("Union") on behalf of Ernest Bason, Esq., asking us to review a decision by the Virgin Islands Supreme Court. On December 28, 2012, the President signed H.R. 6116, "a bill that would eliminate our certiorari jurisdiction over final decisions of the Virgin Islands Supreme Court and replace it with direct review by the Supreme Court of the United States." Kendall v. Daily News Publ'g Co., 716 F.3d 82, 86 (3d Cir. 2013) (citation omitted) ("Kendall I"). We conclude that we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the date of enactment of H.R. 6116. Although we thereby still possess certiorari jurisdiction with respect to the proceedings filed by the Union and the Government of the Virgin Islands in the Virgin Islands Superior Court, we nevertheless must dismiss the Union's certiorari petition as moot. Accordingly, we cannot—and do not—reach the question of "whether title 24, section 374(a) of the Virgin Islands Code is harmonious with title 3, section 113(a) of the Virgin Islands Code." We, however, will vacate the Virgin Islands Supreme Court's order and opinion and will remand with instructions to the Virgin Islands Supreme Court to vacate the portions of the Virgin Islands Superior Court's judgment and opinion that addressed the issue of reinstatement.

I.

Ernest F. Bason, Esq., was employed as an Assistant Attorney General with the Virgin Islands Department of Justice. Most Assistant Attorneys General, including Bason,

were subject to a collective bargaining agreement, and the Union served as their exclusive bargaining representative. In a July 1, 2010 letter, the Virgin Islands Attorney General informed Bason that he intended to impose a suspension and to terminate his employment. The Union filed a grievance on Bason's behalf challenging this action. In a letter dated July 23, 2010, the Governor of the Virgin Islands accepted the Attorney General's recommendation and approved Bason's immediate termination. Withdrawing the previous grievance, the Union submitted a second grievance on behalf of Bason challenging the Governor's decision. The second grievance went to arbitration. On January 2, 2011, the Arbitrator entered an award determining that the underlying grievance was arbitrable and properly before him for resolution. He issued his final award and opinion on April 29, 2011, specifically finding that the Governor lacked just cause to remove Bason. In addition, the Arbitrator awarded the following remedy:

> The Arbitrator awards the Grievant <u>immediate</u> reinstatement to his previous employment as an Assistant Attorney General and the <u>immediate</u> restoration of all emoluments associated with his employment as an Assistant Attorney General, including without limitation, all related benefits and seniority effective July 1, 2010 and back pay for the period between the termination of the Suspension imposed by the Attorney General in his June 7, 2010 letter to the Grievant (J-#4) and the Employer's actual reinstatement of the Grievant to his employment

4

as an Assistant Attorney General pursuant to this Award.

(Id.)

On May 9, 2011, the Government of the Virgin Islands filed a complaint in the Virgin Islands Superior Court (No. ST-11-CV-308). The Government asked the Virgin Islands Superior Court to vacate the arbitration award and to enter a declaratory judgment providing that the Virgin Islands Justice Department had no obligation to reinstate Bason. Acting on Bason's behalf, the Union filed its own complaint on June 7, 2011 (and the Government, in turn, filed a counterclaim) (No. ST-11-CV-364). The Union asked the Virgin Islands Superior Court to confirm the arbitration award. The Virgin Islands Superior Court consolidated the two cases. The parties filed summary judgment motions (and the Union also filed motions to dismiss and to confirm the arbitration award).

On December 13, 2011, the Virgin Islands Superior Court granted in part and denied in part the motions filed by the Union and the Government. In its judgment, the Virgin Islands Superior Court vacated the April 29, 2011 arbitration award "but only to the extent that it grants relief prior to July 23, 2010" and ordered "that judgment is entered in Case No. ST-11-CV-308 in favor of the Government on Count IV of its Verified Complaint to this extent only." (A34.) It likewise entered judgment in the Government's favor as to Count IV of its counterclaim "to this extent only." (Id.) The Virgin Islands Superior Court confirmed the arbitration award "in all other respects" and thereby ordered judgment to be entered to

5

this extent "in favor of the Union in Case No. ST-11-CV-364 on its Action to Confirm an Arbitration Award." (Id.) It was ordered, adjudged, and decreed that:

> . . . Ernest F. Bason, Esquire is **IMMEDIATELY REINSTATED** as an assistant attorney general in the Virgin Islands Department of Justice, Office of the Attorney General, with the immediate restoration of all employment benefits, seniority, and other emoluments of employment effective July 23, 2010, and back pay from July 23, 2010 to the date of his actual reinstatement . . .

(Id.)

In its accompanying opinion, the Virgin Islands Superior Court considered the Government's two theories for relief: (1) that the Arbitrator exceeded his authority when he ruled that the Union's grievance was timely filed; and (2) that "the arbitrator's decision to reinstate Attorney Bason violates the public policy that assistant attorneys general can be fired by the Governor without cause." Gov't of the V.I. v. UIW-SIU, Nos. ST-11-CV-308, ST-11-CV-364, 2011 WL 6936479, at *3 (V.I. Super. Ct. Dec. 12, 2011). According to the Virgin Islands Superior Court, the Arbitrator exceeded his authority by granting any relief based on the July 1, 2010 letter (or a June 7, 2010 letter imposing a suspension) because the Union withdrew its grievance as to the July 1, 2010 action (and never filed a grievance with respect to the June 7, 2010 suspension). "Therefore, the award must be vacated to the extent that it awards any relief to Attorney Bason prior to July

6

23, 2010." Id. at *5. With respect to the government's second theory, the Virgin Islands Superior Court concluded that "[t]he arbitrator's decision to reinstate Bason is not contrary to Virgin Islands public policy." Id. at *7 (emphasis omitted). "Therefore, the Court will confirm the immediate reinstatement of Ernest Bason, Esquire as an assistant attorney general with the Virgin Islands Department of Justice, Office of the Attorney General, with all benefits, seniority, and back pay retroactive to July 23, 2010." Id. at *9.

On December 16, 2011, the Government notified the Virgin Islands Superior Court of Bason's reinstatement, i.e., he was directed to report to work on December 19, 2011. It also filed a notice of appeal on December 20, 2011, appealing from the opinion and judgment to the Virgin Islands Supreme Court. On March 15, 2012, the Virgin Islands Superior Court denied the Government's motion for a stay of the portion of the judgment ordering the Government to pay back pay as well as the Union's motion for contempt and sanctions on account of the Government's alleged failure to pay the requisite back pay.

The Union also moved to dismiss the Government's appeal. According to the Union, the Virgin Islands Supreme Court lacked appellate jurisdiction because neither the Virgin Islands Superior Court nor the Arbitrator ever established the amount of back pay owed to Bason and because the absence of a clear monetary judgment "renders the December 13, 2011 Opinion and Judgment non-final for purposes of section 32 of title 4 [of the Virgin Islands Code]." Gov't of the

Virgin Islands v. UIW-SIU, S. Ct. Civ. No. 2011-0115, 2012 WL 5901921, at *3 (V.I. Nov. 26, 2012). "As more fully explained in the motion to dismiss, the failure to calculate the specific amount of back pay owed to Bason became relevant since it caused the Superior Court, in a March 15, 2012 Order, to deny the UIW-SIU's motion to hold the Government in civil contempt." Id. at *3 n.2. The parties were directed to submit supplemental briefing on this jurisdictional issue. On September 10, 2012, the Virgin Islands Supreme Court denied as moot the Government's motion to stay the back pay portion of the judgment, noting that no monetary judgment had been entered and that the Government had never requested a stay of the portion of the judgment ordering Bason's reinstatement.

After hearing oral argument, the Virgin Islands Supreme Court disposed of the Government's appeal in an order and opinion entered on November 26, 2012. In short, it reversed "the portion of the decision which mandated Bason's reinstatement." Id. at *1.

Accordingly, the Virgin Islands Supreme Court stated in its order that "the portion of the Superior Court's December 13, 2011 Opinion and Judgment which authorizes Ernest Bason's reinstatement as an Assistant Attorney General is **REVERSED**" and that "the instant appeal is **DISMISSED** with respect to all issues." (A21-A22.) Furthermore, the matter was ordered remanded, and "the Superior Court is directed to issue a final judgment consistent with this Opinion." (A22.)

8

In the accompanying opinion, the Virgin Islands Supreme Court began with the threshold question of appellate jurisdiction. Title 4, section 32(a) of the Virgin Islands Code embodies "the final judgment rule," which generally requires a party "'to raise all claims of error in a single appeal following final judgment on the merits.'" Id. at *3 (quoting Bryant v. People, 53 V.I. 395, 400 (V.I. 2010)). Both parties recognized that the December 13, 2011 opinion and judgment did not "technically" constitute a final order because neither the Virgin Islands Superior Court nor the Arbitrator calculated the amount of back pay the Government must remit to Bason. Id. The Government proceeded to invoke the practical finality rule permitting an appellate court to review an order that resolves all non-ministerial issues, but the Union claimed that the back pay calculation "is not a purely mechanical task" due to the parties' disagreement as to the amount. Id. As an alternative basis for appellate jurisdiction, the Government claimed that the opinion and judgment mandating Bason's immediate reinstatement constituted an appealable injunction under title 4, section 33(b)(1) of the Virgin Islands Code.

According to the Virgin Islands Supreme Court, "[t]he UIW-SIU is correct that the parties' dispute as to how the Superior Court should calculate any monetary damages ultimately awarded to Bason precludes us from exercising jurisdiction under the practical finality rule." Id. (citing Hard Rock Cafe v. Lee, 54 V.I. 622, 627 n.6 (V.I. 2011)). However, it also agreed with the Government's alternative theory that an order mandating immediate reinstatement constitutes an appealable injunction. The Union requested

9

Bason's reinstatement, and the Virgin Islands Superior Court could have used its contempt powers if the Government had refused to reinstate him within the requisite time period. "Accordingly, we possess jurisdiction over this appeal, but only with respect to the Superior Court's directive that the Government reinstate Bason." Id.

Turning to the merits, the Virgin Islands Supreme Court determined that the portion of the Virgin Islands Superior Court's opinion and judgment ordering the reinstatement of Bason must be reversed. "The UIW-SIU concedes that, under Section 11 of the Revised Organic Act of 1954, the Governor 'may remove[ ] all officers and employees of the executive branch of the government of the Virgin Islands, except as otherwise provided . . . under the laws of the Virgin Islands, 48 U.S.C. § 1591, and that the Virgin Islands Code authorizes the Governor to remove an Assistant Attorney General. See V.I.C. § 113 ('The Assistant Attorneys General shall be appointed by the Governor, and shall hold office during the continuance in office of the Governor . . . unless sooner removed by the Governor.')." Id. at *4. "Assuming without deciding that Assistant Attorneys General may unionize pursuant to chapter 14 of title 24 (24 V.I.C. § 361 et seq.)—as the Superior Court found in its December 13, 2011 Opinion—their right to do so is not unlimited." Id. at *5 (footnotes omitted). Title 24, section 374 "expressly provides that '[r]ates of pay, hours, salaries, employee benefits, terms and conditions of employment and all matters relating thereto may be specifically negotiated in a collective bargaining proceeding between the public employer and the exclusive representative *unless otherwise*

10

*specifically restricted by law*.'" Id. Although the Union attempted to harmonize section 113 and the collective bargaining agreement by arguing that the agreement simply prescribes the manner and conditions by which terminations may take place, "this Court disagrees that any harmonization is possible with respect to the reinstatement provisions." Id.; see also, e.g., id. ("Given that section 113 actually *mandates* automatic discharges of Assistant Attorneys General without cause at the conclusion of a Governor's term, it is not clear to this Court how the provisions of the collective bargaining agreement which permit reinstatement by an arbitrator of an Assistant Attorney General discharged without just cause can in any way be reconciled with the statutory enactment.")

In the end, the Virgin Islands Supreme Court concluded that:

> Since the portion of the December 13, 2011 Opinion and Judgment mandating Bason's reinstatement constituted an appealable injunction, this Court possesses jurisdiction over that portion of the underlying order pursuant to section 33(b)(1) of title 4. As to the merits, to the extent Assistant Attorneys General may unionize pursuant to title 24, chapter 14, we hold that section 113 of title 3 precluded the arbitrator and the Superior Court from mandating that the Government reinstate Bason as an Assistant Attorney General. Accordingly, we reverse the portion of the December 13, 2011 Opinion and Judgment that

11

> authorizes Bason's reinstatement as an Assistant Attorney General, and direct the Superior Court, on remand, to issue a final judgment which is consistent with this Opinion.

Id.

On November 30, 2012, the Union filed a motion with the Virgin Islands Supreme Court to stay enforcement of the judgment pending the filing of an application for a writ of certiorari in this Court. By December 13, 2012, Congress passed H.R. 6116, which in short "would eliminate our certiorari jurisdiction over final decisions of the Virgin Islands Supreme Court and replace it with direct review by the Supreme Court of the United States." Kendall I, 716 F.3d at 86 (citation omitted). The President of the United States signed H.R. 6116 into law on December 28, 2012. Section 3 of this legislation expressly provides that "[t]he amendments made by this Act apply to cases commenced on or after the date of the enactment of this Act." On December 21, 2012, the Union filed a motion asking the Virgin Islands Supreme Court to render an advisory opinion on the following question: "Whether H.R. 6116 applies to all cases commenced at the trial level on or after its enactment or only to appeals from decisions or orders of this court commenced on or after the date of enactment." (12/21/12 Motion at 1 (emphasis omitted).) The Union also filed a motion requesting certified docket entries. On January 15, 2013, the Virgin Islands Supreme Court issued its mandate and denied all three motions. It noted that the Government's appeal constituted an interlocutory appeal from the issuance of an

injunction and that it never enjoined the Virgin Islands Superior Court from conducting any proceedings during the pendency of the appeal. Furthermore, mere monetary loss resulting from loss of employment did not constitute good cause for a stay because "Appellee would be entitled to receive back pay in the event Appellee's certiorari petition is granted and this Court's November 26, 2012 Opinion ultimately reversed." (1/15/13 Order at 2 (citation omitted).) With respect to the advisory opinion motion, the Virgin Islands Supreme Court explained that "Appellee has cited to no authority, and this Court can find none, for the proposition that this Court may properly assist a litigant in interpreting a federal statute." (Id.)

On remand to the Virgin Islands Superior Court, the Union filed a motion to stay, while the government moved for issuance of a final judgment. The Virgin Islands Superior Court heard oral argument on these motions on May 30, 2013. To date, the parties' respective motions are still pending.

On January 25, 2013, the Union filed a petition for a writ of certiorari with this Court. On March 8, 2013, the Clerk issued an order noting that this Court had just filed an opinion in Kendall v. Daily News Publishing Co., "addressing the issue of jurisdiction over petitions for certiorari after the passage of HR 6116." (3/18/13 Order at 1.) The parties were given the opportunity to file jurisdictional submissions, which they both did.

This Court filed the following order on April 24, 2013:

13

The foregoing petition for a writ of certiorari will not be dismissed for lack of jurisdiction on the basis of H.R. 6116, Pub. L. 112-226, at this time. The petition is granted as to the first question presented – i.e., whether title 24, section 374(a) of the Virgin Islands Code is harmonious with title 3, section 113(a) of the Virgin Islands Code. In addition to such arguments as the parties wish to raise on that issue, the parties are directed to address whether the Virgin Islands Supreme Court's decision is a "final decision" within the meaning of former 48 U.S.C. § 1613 (1994), in light of that court's remand to the Virgin Islands Superior Court. See generally Defoe v. Philip, 702 F.3d 735, 740-41 (3d Cir. 2012). Our decision not to dismiss this petition at this time does not represent a ruling that this Court retains jurisdiction over this petition under H.R. 6116, Pub. L. 112-226. That issue will be decided if necessary by the panel of this Court that considers this appeal on the merits.

(4/24/13 Order at 2.)

After briefing was concluded, the Union filed a suggestion of death pursuant to Federal Rule of Appellate Procedure 43(a)(1). It notified this Court "that on or about September 3, 2013 nominal appellant Attorney Ernest Bason passed away." (Suggestion of Death at 1.) We asked the

14

Union and the Government to file letter submissions addressing the possible effect of Bason's death on our jurisdiction and whether "this matter is now moot because Mr. Bason cannot be reinstated to his position as an Assistant Attorney General." (10/17/13 Letter at 1.) Both parties did so.[1]

---

[1] On March 19, 2014, we filed our original opinion and judgment in this proceeding. See UIW-SIU v. Gov't of the V.I., 746 F.3d 115 (3d Cir. 2014). We held that we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the date of enactment of H.R. 6116. Although we thereby determined that we possess certiorari jurisdiction with respect to the proceedings filed by the Union and the Government in the Virgin Islands Superior Court, we nevertheless dismissed the Union's certiorari petition as moot on account of Bason's death. The Union then filed a petition for rehearing and rehearing en banc. Relying on the rule recognized by the Supreme Court in United States v. Munsingwear, Inc., 340 U.S. 36 (1950), the Union argues that, when an appeal or certiorari proceeding is dismissed for mootness, the decision under review also must be vacated. Accordingly, it asks this Court "to clarify its March 19, 2014 Opinion to explicitly direct that the entire November 26, 2012 Decision of the Supreme Court of the Virgin Islands and those portions of the December 13, 2011 decision of the Superior Court of the Virgin Islands that address the issue of reinstatement be vacated." (Petition for Rehearing at 9.) The Government filed an opposition to the Union's rehearing petition. In a May 23, 2014 order, we granted the petition for panel hearing and vacated our March

15

19, 2014 opinion and judgment.

On June 2, 2014, the Virgin Islands Supreme Court submitted a notice of filing of amicus curiae brief or, in the alternative, a motion for leave to file amicus curiae brief in support of neither party. In its proposed amicus curiae brief, the Virgin Islands Supreme Court argues at some length that: (1) we must refrain from interpreting H.R. 6116 given our mootness determination; (2) in any event, we were wrong to conclude that we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the enactment date of H.R. 6116; and (3) the Munsingwear rule does not apply because we lack supervisory authority over the Virgin Islands Supreme Court. Although the Virgin Islands Supreme Court criticizes the manner in which the Government has handled this certiorari proceeding, the Government nevertheless joined in the arguments advanced in this amicus curiae brief. The Union, however, filed a response in opposition to the submission by the Virgin Islands Supreme Court.

On July 2, 2014, this Court denied the Virgin Islands Supreme Court's motion to file its amicus brief pursuant to Federal Rule of Appellate Procedure 29(a) on the grounds that it does not qualify as the "state" under this rule. We, however, granted its alternative motion for leave to file the amicus curiae brief pursuant to Federal Rule of Appellate Procedure 29(b). The Union then filed its response to this amicus curiae brief.

16

Nevertheless, it does appear rather unusual and even troubling for a court to submit an amicus curiae brief, especially where the court in question actually issued the decision that is the subject of the appellate or certiorari proceeding. In addition, we find the specific circumstances under which this amicus curiae brief was filed to be rather problematic. After all, the Virgin Islands Supreme Court could have submitted a brief addressing the question of our certiorari jurisdiction under H.R. 6116 when we asked the parties to file jurisdictional submissions on this specific question or when briefing was concluded. The Union even filed a motion before the effective date of this legislation formally asking the Virgin Islands Supreme Court to render an advisory opinion answering the question of whether H.R. 6116 applies to all cases commenced at the trial level on or after its enactment or only applies to appeals from decisions of the Virgin Islands Supreme Court commenced on or after the date of enactment. Although it now offers its own interpretation of H.R. 6116, the Virgin Islands Supreme Court adamantly refused to answer the question put to it on the grounds that it could not assist a litigant in interpreting a federal statute. It also appears that the Virgin Islands Supreme Court could have addressed the possible consequences arising out of Bason's death when the suggestion of death was filed and when we asked the parties to provide letter submissions regarding the possible effect of this death on our jurisdiction. In the end, the Virgin Islands Supreme Court did not submit an amicus curiae brief until after we rendered our initial opinion and judgment and granted the Union's petition for panel rehearing. While the

17

This proceeding presents us with two threshold questions: (1) whether we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the date of enactment of H.R. 6116; and (2) even if we thereby retain certiorari jurisdiction in the present circumstances under H.R. 6116, whether Bason's death moots the current certiorari proceeding. While we conclude that we still possess certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before H.R. 6116's enactment date, we will nevertheless dismiss the Union's certiorari petition as moot on account of Bason's death. Accordingly, we cannot—and do not—reach the question of "whether title 24, section 374(a) of the Virgin Islands Code is harmonious with title 3, section 113(a) of the Virgin Islands Code."[2] However, we will vacate the Virgin Islands Supreme Court's order and opinion and will remand with instructions

Union itself merely asks this Court to follow the Munsingwear rule and vacate the Virgin Islands Supreme Court's decision, the Virgin Islands Supreme Court goes on to critique the interpretation of H.R. 6116 that we offered in our initial opinion as well as our determination to consider whether we retain certiorari jurisdiction under H.R. 6116 in the first place. In any event, we have fully considered—and reject—the various arguments advanced by the Virgin Islands Supreme Court on their merits.

[2] We likewise do not address the question of "whether the Virgin Islands Supreme Court's decision is a 'final decision' within the meaning of [§ 1613] in light of that court's remand to the Virgin Islands Superior Court."

18

to the Virgin Islands Supreme Court to vacate the portions of the Virgin Islands Superior Court's judgment and opinion that addressed the issue of reinstatement.[3]

---

[3] The Virgin Islands Supreme Court argues that we ought to refrain from interpreting H.R. 6116 in light of our determination that the certiorari proceeding is moot. It is uncontested that, while threshold jurisdictional issues must ordinarily be decided before turning to the merits, "there is no mandatory 'sequencing of jurisdictional issues.'" Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 431 (2007) (quoting Ruhrgas AG v. Marathon Oil Co., 526 U.S. 574, 584 (1999)). In Camreta v. Greene, 131 S. Ct. 2020 (2011), the Supreme Court observed that it "has never held that it may consider only one threshold issue per case," id. at 2033 n.8. Accordingly, it decided that government officials who prevailed on qualified immunity grounds before the circuit court could obtain Supreme Court review of a circuit court's decision that their conduct violated the Constitution even though the case had otherwise become moot. Id. at 2026-36. We also determine that, given the specific circumstances of this certiorari proceeding, it is appropriate to begin with the threshold question of our subject matter jurisdiction over the current certiorari proceeding pursuant to H.R. 6116 before deciding whether Bason's subsequent death otherwise moots this proceeding. After all, the Court specifically directed the parties to address this jurisdictional question, and this question was then fully briefed by the parties before Bason's death. See, e.g., id. at 2033 n.8 ("Moreover, that issue was fully litigated in this Court"). As our mootness discussion in Section II.B. indicates, the two

19

## A.    H.R. 6116

In 1984, Congress authorized the Legislature of the Virgin Islands to establish an appellate court for the Virgin Islands. See, e.g., Kendall I, 716 F.3d at 86. In 2004, the legislature created the Supreme Court of the Virgin Islands, which began to exercise its judicial functions in 2007. See, e.g., Defoe, 702 F.3d at 738-39. The pre-amended version of 28 U.S.C. § 1613 states in relevant part that:

> The relations between the courts established by the Constitution or laws of the United States and the courts established by local law with respect to appeals, certiorari, removal of causes, the issuance of writs of habeas corpus, and other matters or proceedings shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States in such matters and proceedings: *Provided,* That for the first fifteen years

threshold questions are not unrelated. See, e.g., id. ("[O]ur discussion of reviewability is critical to our ultimate disposition of this suit."). Similarly, the question of mootness, which arises out of an unusual and even unique set of circumstances, does not represent "a textbook case" for immediate dismissal. Sinochem, 549 U.S. at 435 ("This is a textbook case for immediate *forum non conveniens* dismissal.").

> following the establishment of the appellate court authorized by section 1611(a) of this title, the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had. . . .

"[U]nlike the United Sates Supreme Court's certiorari statute, § 1613 is not limited to decisions on federal law." Defoe v. Phillip, 702 F.3d 735, 743 (3d Cir. 2012). "We also have the discretion to review the Virgin Islands Supreme Court's decisions on local law" and will reverse such a decision if it is "manifestly erroneous or inescapably wrong." Id. (citing Pichardo v. V.I. Comm'r of Labor, 613 F.3d 87, 96 (3d Cir. 2010)). This temporary period of certiorari jurisdiction was designed to allow enough time for the new court "to develop 'sufficient institutional traditions [of its own] to justify direct review by the Supreme Court of the United States.'" Kendall I, 716 F.3d at 86 (quoting § 1613). Once the Virgin Islands Supreme Court established the requisite traditions, it would assume the same role as the highest court of any state, i.e., "it will be the final authority on Virgin Islands law." Defoe, 702 F.3d at 739. The Supreme Court would then exercise certiorari review over the Virgin Islands Supreme Court's final decisions on questions of federal law, and, in contrast, we would no longer possess certiorari jurisdiction as to its rulings on questions of either federal or Virgin Islands local law. See, e.g., id.

21

"Recognizing that the Virgin Islands Supreme Court might develop sufficient institutional traditions before the fifteen-year mark, however, Congress required this Court to regularly evaluate and report on its progress." Kendall I, 716 F.3d at 86 (citing § 1613; Defoe, 702 F.3d at 739-40). The Virgin Islands Supreme Court "passed that test with flying colors" in 2012 "when a committee of this Court recommended to the Third Circuit Judicial Council that Congress eliminate our certiorari jurisdiction over Virgin Islands Supreme Court decisions in favor of direct review by the United States Supreme Court." Id. (citing Judicial Council of the U.S. Court of Appeals for the Third Circuit, Report on the Virgin Islands Supreme Court 1 (2012), available at http://www.visusupremecourt.org/wfData/files/BookletReport ofVirginIslandsSupremeCourt.pdf)). The Executive and Legislative Branches acted with dispatch on our recommendation:

> By December 13, 2012, both the House of Representatives and the Senate had passed H.R. 6116, a bill that would eliminate our certiorari jurisdiction over final decisions of the Virgin Islands Supreme Court and replace it with direct review by the Supreme Court of the United States. See An Act to amend the Revised Organic Act of the Virgin Islands to provide for direct review by the United States Supreme Court of decisions of the Virgin Islands Supreme Court, H.R. 6116, §§ 1-2, 112th Cong. (2012). President Obama signed H.R. 6116 into

law on December 28, 2012.

Id. Section 1 of this legislation amends § 1613 by striking the language granting this Court certiorari jurisdiction over final decisions of the highest court of the Virgin Islands. Section 2 of H.R. 6116 adds the following section to the statute governing the jurisdiction of the Supreme Court:

> "[28 U.S.C.] § 1260. Supreme Court of the Virgin Islands; certiorari
>
> "Final judgments or decrees rendered by the Supreme Court of the Virgin Islands may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Virgin Islands is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties or statutes of, or any commission held or authority exercised under, the United States."

Section 3 of H.R. 6116, entitled "Effective Date," provides that "[t]he amendments made by this Act apply to cases commenced on or after the date of the enactment of this Act," i.e., December 28, 2012.[4]

---

[4] H.R. 6116 states:

23

SECTION 1. DIRECT REVIEW BY U.S. SUPREME COURT OF DECISIONS OF VIRGIN ISLANDS SUPREME COURT.

Section 23 of the Revised Organic Act of the Virgin Islands (48 U.S.C. 1613) is amended by striking ": *Provided*, That" and all that follows through the end and inserting a period.

SEC. 2. JURISDICTION OF THE SUPREME COURT.

(a) IN GENERAL.—Chapter 81 of title 28, United States Code, is amended by adding at the end the following:

"§ 1260. Supreme Court of the Virgin Islands; certiorari

"Final judgments or decrees rendered by the Supreme Court of the Virgin Islands may be reviewed by the Supreme Court by writ of certiorari where the validity of a treaty or statute of the United States is drawn in question or where the validity of a statute of the Virgin Islands is drawn in question on the ground of its being repugnant to the Constitution, treaties, or laws of the United States, or where any title, right, privilege, or immunity is specially set up or claimed under the Constitution or the treaties

24

This Court has addressed the effect of H.R. 6116 on its certiorari jurisdiction in two opinions involving Virgin Islands Supreme Court decisions on questions of federal law: Kendall I, 716 F.3d 82, and In re Kendall, 712 F.3d 814 (3d Cir. 2013) ("Kendall II"). In Kendall I, we decided that this legislation does not strip us of our certiorari jurisdiction over cases "in which certiorari has been granted and the matter is awaiting decision at the time of the bill's enactment." Kendall I, 716 F.3d at 87. The Kendall II Court then characterized Kendall I as "holding that Congress's recent elimination of the Third Circuit's certiorari jurisdiction over decisions of the Virgin Islands Supreme Court does not affect, at a minimum, certiorari petitions filed before the

---

or statutes of, or any commission held or authority exercised under, the United States." .

(b) CONFORMING AMENDMENT.—The table of sections for chapter 81 of title 28, United States Code, is amended by adding at the end the following new item:

"1260. Supreme Court of the Virgin Islands; certiorari." .

SEC. 3. EFFECTIVE DATE.

The amendments made by this Act apply to cases commenced on or after the date of the enactment of this Act.

25

effective date of the jurisdiction-stripping act."  Kendall II, 712 F.3d at 821 n.3 (citing Kendall I).

"When interpreting a statute, we normally presume that the statute does not apply retroactively—that is, to cases pending on the date of the law's enactment—absent clear congressional intent to the contrary."  Kendall I, 716 F.3d at 87 (citing Hamdan v. Rumsfeld, 548 U.S. 557, 576 (2006)). As we observed in Kendall I, the presumption against retroactivity does not apply to legislation that merely alters jurisdiction.  See, e.g., id.  "'[U]nlike other intervening changes in the law, a jurisdiction-conferring or jurisdiction-stripping statute usually "takes away no substantive rights but simply changes the tribunal that is to hear the case.'"'  Id. (quoting Hamdan, 548 U.S. at 576-77).  Accordingly, "'no retroactivity problem arises' with respect to an intervening change in jurisdiction 'because the change in the law does not "impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed.'"'  Id. (quoting Hamdan, 548 U.S. at 577).

This "'does not mean, however, that all jurisdiction-stripping provisions  . . . must apply to cases pending at the time of their enactment.'"  Id. (quoting Hamdan, 548 U.S. at 577).  Simply put, a court still looks to generally applicable rules of statutory construction to decide whether a statute takes away its jurisdiction.  This is exactly what we did in Kendall I:

26

After all, "'[n]ormal rules of [statutory] construction' . . . may dictate otherwise." [Hamdan, 548 U.S. at 577] (quoting Lindh v. Murphy, [521 U.S. 320, 326 (1997)]). Here, Congress spoke clearly: "[t]he amendments made by [H.R. 6116]"—that is, the elimination of the Third Circuit's certiorari jurisdiction and substitution of such review by the United States Supreme Court—"apply to cases commenced on or after the date of the enactment of [H.R. 6116]." H.R. 6116, § 3. No matter whether "cases commenced" carries a broader meaning referring to the filing of a complaint in the Superior Court or a narrower meaning referring to the filing of a certiorari petition in this Court—an issue we need not decide today— Kendall commenced this case long before H.R. 6116's enactment.

Id. In other words, H.R. 6116 only applies to "cases commenced" on or after enactment date, which means that it does not apply to "cases commenced" before that date.

In Kendall I, we addressed—and distinguished—the Ninth Circuit's ruling in Santos v. Guam, 436 F.3d 1051 (9th Cir. 2006), which held that Congress's elimination of the Ninth Circuit's certiorari jurisdiction over the Guam Supreme Court (and substitution of direct review by the Supreme Court) applied to pending cases. Kendall I, 716 F.3d at 87. "To the extent that Santos interprets Supreme Court precedent as holding that jurisdiction-stripping provisions automatically

27

apply retroactively absent an express reservation of jurisdiction over pending cases, the Supreme Court subsequently rejected such an approach in [Hamdan v. Rumsfeld, 548 U.S. 557 (2006)]. See [id. at 584] (rejecting this 'inflexible' rule advanced by Justice Scalia's dissent and by the Government)." Kendall I, 716 F.3d at 87. "More importantly," H.R. 6116 was markedly different from the legislation at issue in Santos:

> In Santos, the Ninth Circuit addressed a statute in which Congress was completely silent about the effective date of the jurisdiction-stripping provision. Santos, 436 F.3d at 1053 (explaining that Congress did not "express[ ] an intent as to the effective date"). By contrast, Congress was explicit that H.R. 6116's amendments apply only "to cases commenced on or after the date of the enactment" of the statute. See H.R. 6116, § 3. As a result, we retain certiorari jurisdiction over all cases "commenced" before the President signed H.R. 6116, including this one. See Hamdan, [548 U.S. at 584] (drawing the negative inference that Congress did not intend to eliminate jurisdiction over pending detainee habeas petitions where the statute was silent about whether its jurisdiction-stripping subsection applied to cases even though it expressly made two other subsections retroactive).

Id. at 87-88.

28

The Government and the Union filed their respective Virgin Islands Superior Court actions in 2011, and the Government filed its ultimately successful appeal to the Virgin Islands Supreme Court in the same year. Although the Virgin Islands Supreme Court entered its order and opinion on November 26, 2012, the Union filed its otherwise timely certiorari petition on January 23, 2013—after the date of enactment of H.R. 6116, i.e., December 28, 2012. We therefore must decide the specific issue that we refused to reach in Kendall I: "whether 'cases commenced' carries a broader meaning referring to the filing of a complaint in the Superior Court or a narrower meaning referring to the filing of a certiorari petition in this Court." Id. at 87. Relying in particular on the Supreme Court's decision in Slack v. McDaniel, 529 U.S. 473 (2000), as well as the alleged purpose of the legislation, the Government asks us to construe this "cases commenced" language to mean the filing of a certiorari petition. Based on the language of the statute, analogous legislation, and prior case law, we agree with the Union that we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before H.R. 6116's enactment date. This includes the proceedings filed by the Government and the Union in the Virgin Islands Superior Court in 2011. In other words, we believe that "'cases commenced' carries a broader meaning referring to the filing of a complaint in the [Virgin Islands] Superior Court."

The plain language of the statutory terms "cases commenced" appears to encompass proceedings filed in the Virgin Islands courts. See, e.g., United States v. Brown, 740

29

F.3d 145, 149 (3d Cir. 2014) ("'[T]he starting point for interpreting a statute is the language of the statute itself.' When words are not defined within the statute, we construe them 'in accordance with [their] ordinary or natural meaning.' We do not, however, do so blindly." (citations omitted)); Allen ex rel. Martin v. LaSalle Bank, 629 F.3d 364, 367 (3d Cir. 2011) ("To discern Congress' intent we begin with the text. If the statute's plain language is unambiguous and expresses that intent with sufficient precision, we need not look further." (citations omitted)). The term "case" has generally been understood to include judicial proceedings of any kind. For instance, the Supreme Court has noted that "'[t]he words "case" and "cause" are constantly used as synonyms in statutes . . ., each meaning a proceeding in court, a suit, or action.'" Hohn v. United States, 524 U.S. 236, 241 (1998) (quoting Blyew v. United States, 13 Wall. 581, 595, 20 L. Ed. 638 (1871))). "[A] 'case' in the broader sense" has been defined as "'[a] civil or criminal proceeding, action, suit, or controversy at law or in equity.'" In re Zarnel, 619 F.3d 156, 166 (2d Cir. 2010) (quoting Black's Law Dictionary 243 (9th ed. 2009)). In addition, a case or cause of action has traditionally been understood as "commenced when it is first brought in an appropriate court." Pritchett v. Office Depot, Inc., 420 F.3d 1090, 1094 (10th Cir. 2005) (citing Fed. R. Civ. P. 3); see also, e.g., Bush v. Cheaptickets, Inc., 425 F.3d 683, 686 (9th Cir. 2005) ("In California, as in the federal courts, a suit is 'commenced' upon filing." (citations omitted)).

If it had indeed meant to strip this Court of certiorari jurisdiction over proceedings already filed in the Virgin

30

Islands courts before the enactment date of the legislation, Congress could have done so far more clearly. In fact, it has done as much in the past. For example, Congress could have provided that H.R. 6116 applies to "appellate cases commenced" or "certiorari proceedings commenced" in the Third Circuit on or after the date of enactment. It evidently could have stripped this Court of any remaining certiorari jurisdiction by simply omitting any reference to an effective date, which is what Congress apparently did with respect to the Ninth Circuit's jurisdiction over the Guam Supreme Court. Santos, 436 F.3d at 1053; see also Kendall I, 716 F.3d at 87. When Congress stripped the First Circuit of its jurisdiction over the Puerto Rico Supreme Court, it expressly stated that "such repeal shall not deprive the Court of Appeals of jurisdiction to hear and determine appeals taken to that court from the Supreme Court of Puerto Rico before the effective date of this Act." Act of Aug. 30, 1961, Pub. L. No. 87-189, § 3, 75 Stat. 417 (1961). In 1988, Congress amended the statutory scheme governing the Supreme Court's certiorari jurisdiction. However, in doing so, it expressly stated that the amendments "shall not apply to cases pending in the Supreme Court on the effective date of such amendment" (or otherwise affect the right to review of a judgment or decree entered before the effective date). Act of June 27, 1988, Pub. L. No. 100-352, § 7, 102 Stat. 662 (1988). Congress actually included this type of language in the statutory provision stripping the District Court of the Virgin Islands of appellate jurisdiction over local actions upon the creation by the Virgin Islands Legislature of a Virgin Islands appellate court, i.e., the legislation stated that it

31

"shall not result in the loss of jurisdiction of the district court over any appeal then pending in it."  48 U.S.C. § 1613a(d).

In H.R. 6116, Congress took a different approach than it has in similar circumstances in the past.  In short, the "Effective Date" section of H.R. 6116 does not refer to a particular type of proceeding or a specific judicial body.  This section instead uses expansive and otherwise unmodified language in order to govern the applicability of amendments taking away jurisdiction from one court and granting jurisdiction to another—namely—"cases commenced" on or after the date of enactment.  Instead of enacting an exception reserving our jurisdiction over "pending appeals" (or even "pending cases"), Congress chose to make it clear that it is the jurisdiction-stripping (and jurisdiction-conferring) legislation itself that only applies to "cases commenced" on or after the enactment date.  Congress likewise has repeatedly used somewhat similar language with respect to the applicability of amendments made to other statutory schemes. These include the supplemental jurisdiction statute, Judicial Improvements Act of 1990, Pub. L. 101-650, Title III, § 310, 104 Stat. 5089 (1990) ("The amendments made by this section shall apply to civil actions commenced on or after the date of the enactment of this Act"), the removal jurisdiction statute, Judicial Improvements Act of 1985, Pub. L. No. 99-336, § 3(b), 100 Stat. 633 (2006) ("The Amendment made by this section shall apply with respect to claims in civil actions commenced in State courts on or after the date of the enactment of this section."), and the statute governing removal and interlocutory appeals in class action proceedings, Class Action Fairness Act of 2005, Pub. L. No. 109-2, § 9,

32

119 Stat. 4 (2005) ("The amendments made by this Act shall apply to any civil action commenced on or after the date of enactment of this Act."). The term "cases" evidently carries a broader meaning than the words "civil action" used in these various enactments (e.g., "cases" would include both criminal as well as civil proceedings).

We believe that prior case law also supports our reading of H.R. 6116. After all, we have indicated that "Congress's recent elimination of the Third Circuit's certiorari jurisdiction over decisions of the Virgin Islands Supreme Court does not affect, at a minimum, certiorari petitions filed before the effective date of the jurisdiction-stripping act." Kendall II, 712 F.3d at 821 n.3 (citing Kendall I). In Hamdan, the federal government filed a motion to dismiss a writ of certiorari pursuant to the Detainee Treatment Act, which was enacted after the Supreme Court had already granted the writ and (at least according to the federal government) had the immediate effect of repealing jurisdiction "not just over detainee habeas actions yet to be filed but also over any such actions then pending in any federal court—including this Court." Hamdan, 548 U.S. at 574. As we observed in Kendall I, the Supreme Court instead applied traditional rules of statutory construction to draw "the negative inference that Congress did not intend to eliminate jurisdiction over pending detainee habeas petitions where the statute was silent about whether its jurisdiction-stripping subsection applied to cases even though it expressly made two other subsections retroactive." Kendall I, 716 F.3d at 88 (citing Hamdan, 548 U.S. at 584). The Hamdan Court also rejected the theory that "jurisdiction-stripping provisions

33

automatically apply retroactively absent an express reservation of jurisdiction over pending cases." Id. at 87 (citing Hamdan, 548 U.S. at 584).

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") amended 28 U.S.C. § 2253 to add a new subsection setting forth "certificate of appealability" requirements governing the right to appeal in the habeas context. Slack, 529 U.S. at 477-78, 480-81. In Slack, the petitioner filed his habeas petition before AEDPA's effective date, but the notice of appeal (as well as the district court's order dismissing the petition) were filed after the legislation went into effect. Id. at 479-80. The Supreme Court considered "whether the pre- or post-AEDPA version of § 2253 controls Slack's right to appeal." Id. at 481. In answering this question, the Slack Court took into account its prior AEDPA decision in Lindh v. Murphy, 521 U.S. 320 (1997), in which it concluded that the new version of 28 U.S.C. § 2254(d) (stating that no habeas relief shall be granted with respect to any claim adjudicated on the merits in state court unless the decision was contrary to, or involved an unreasonable application, of clearly established federal law or was based on an unreasonable factual determination) did not apply to habeas applications that were already pending when the statute was passed, id. at 323-27. Applying traditional rules of statutory construction, the Lindh Court drew a negative implication from an AEDPA provision stating that a different part of the legislation (applicable in the capital context) applies to cases pending on or after the date of enactment. Id. at 327 (reading provision "as indicating implicitly that the amendments to chapter 153 were assumed

34

and meant to apply to the general run of habeas cases only when those cases had been filed after the date of the Act."). The Supreme Court, however, rejected Slack's assertion that Lindh meant that § 2253(c) did not apply to him because he commenced his case in the district court before AEDPA's enactment.  Slack, 529 U.S. at 481.  "[T]he [Lindh] Court held that AEDPA's amendments to 28 U.S.C. § 2254, the statute governing entitlement to habeas relief in the district court, applied to cases filed after AEDPA's effective date." Id. (citing Lindh, 521 U.S. at 327).  "For purposes of implementing the holding in Lindh, it must be recognized that § 2254 is directed to proceedings in the district courts while § 2253 is directed to proceedings in the appellate courts."  Id. In other words, because § 2254 is directed to proceedings in the district courts, it applies to cases filed in the district court after AEDPA.  Id.  Section 2253 is directed to appellate proceedings, and it thereby applies to appellate proceedings initiated post-AEDPA even if the habeas petition itself was filed before the effective date of this legislation.  Id. Although Lindh requires the court of appeals to apply pre-AEDPA law in reviewing the district court's ruling for cases commenced in the district court pre-AEDPA, the Supreme Court concluded that post-AEDPA law "governs the right to appeal in cases such as the one now before us."  Id.

The Slack Court further explained that:

> While an appeal is a continuation of the litigation started in the trial court, it is a distinct step.  [Hohn, 524 U.S. at 241]; McKenzie v. A. Engelhard & Sons Co., [266 U.S. 131] (1924).

35

We have described proceedings in the courts of appeals as "appellate cases." E.g., Order of Apr. 30, 1991, 500 U.S. 1009 (amendments to Federal Rules of Appellate Procedure "shall govern all proceedings in appellate cases thereafter commenced"). Under AEDPA, an appellate case is commenced when the application for a COA is filed. Hohn, [524 U.S. at 241]. When Congress instructs us (as Lindh says it has) that application of a statute is triggered by the commencement of a case, the relevant case for a statute directed to appeals is the one initiated in the appellate court. Thus, § 2253(c) governs appellate court proceedings filed after AEDPA's effective date. We see no indication that Congress intended to tie application of the provisions to the date a petition was filed in the district court. The COA statute establishes procedural rules and requires a threshold inquiry into whether the circuit court may entertain an appeal. [Id. at 248]; cf. Lindh, [521 U.S. at 327]. Because Slack sought appellate review two years after AEDPA's effective date, § 2253(c) governs his right to appeal.

36

Id. at 481-82.[5]

At least at first blush, Slack does seem to weigh in favor of the Government's interpretation of H.R. 6116, i.e., because the legislation is supposedly directed to proceedings in the Third Circuit, it would purportedly then apply to proceedings initiated in the Third Circuit after H.R. 6116's date of enactment. Nevertheless, we do not find Slack to be controlling in the present circumstances. Initially, the Supreme Court was not confronted with an express provision stating that amendments would apply to "cases commenced" on or after the date of enactment of the legislation. It accordingly did not discuss whether there may be a meaningful difference between such an open-ended and unmodified provision and a provision that refers, for instance, to "appellate cases commenced." Cf., e.g., AEDPA, Pub. L. 104-132, tit. IX, § 903(c), 110 Stat. 1214 (1996) (providing that fee revision amendments apply to "cases commenced on or after the date of enactment" and "appellate proceedings, in which an appeal is perfected on or after the date of enactment"). In fact, AEDPA lacked any express provision governing the applicability of § 2253 (or § 2254) to pending

---

[5] The Supreme Court in Slack noted that the petitioner in Hohn had also argued that § 2253(c) did not apply because he had filed his habeas petition before AEDPA's effective date. Slack, 529 U.S. at 482. "Though our opinion did not discuss whether § 2253(c) applied to Hohn, we would have had no reason to reach the issue we did resolve, that we had statutory certiorari jurisdiction to review the denial of a COA, if AEDPA did not apply at all." Id.

cases (and the Supreme Court accordingly turned to a provision stating that a different chapter of this habeas legislation "shall apply to cases pending on or after the date of the enactment of this Act"). The habeas provisions at issue in Slack and Lindh likewise did not divest one court of its jurisdiction and confer such jurisdiction on another court. In contrast, we must give effect to a statutory provision stating that amendments stripping us of certiorari jurisdiction (and vesting certiorari jurisdiction in the Supreme Court) apply to "cases commenced" on or after the date of enactment. The statutory language at issue, Congress's use of both similar and dissimilar language in other related contexts, and prior case law all weigh in favor of reading this statutory provision as "referring to the filing of a complaint in the Superior Court"—and we do not believe that the Supreme Court's ruling in Slack alters our conclusion.

We likewise reject the Government's assertion that the intent of H.R. 6116 "can only be accomplished only if the Supreme Court of the United States assumes exclusive jurisdiction over certiorari petitions filed after December 28, 2012, the effective date of the act." (Respondent's Jurisdiction Brief at 4.) We acknowledge that Congress passed and the President signed H.R. 6116 after "a committee of this Court recommended to the Third Circuit Judicial Council that Congress eliminate our certiorari jurisdiction over Virgin Islands Supreme Court decisions in favor of direct review by the United States Supreme Court" because the new court had succeeded in developing sufficient institutional traditions to justify such direct review. Kendall I, 716 F.3d at 86 (citation omitted). In other words, the court

38

created by the Virgin Islands Legislature passed its test "with flying colors." Id. (citation omitted). Nevertheless, taken to its logical conclusion, the notion that there is no longer any reason for us to review decisions by the Virgin Islands Supreme Court would indicate that we should also lose jurisdiction even where the certiorari petition was filed or granted before H.R. 6116's enactment date. Although it could have taken this step (and evidently has done so in the past, see, e.g., id. at 87), Congress instead chose to include an explicit provision making it clear that its jurisdiction-stripping amendments only apply to "cases commenced" on or after the enactment date. We accordingly have already determined that we retain jurisdiction with respect to proceedings in which the certiorari petitions were either granted or filed before this date. We add that, like litigants who filed their certiorari petitions before December 28, 2012, parties who were in the midst of litigating a proceeding in the Virgin Islands courts could have reasonably expected that they would have the right to file a petition for certiorari with the Third Circuit and, at the very least, possibly obtain further review with respect to questions of Virgin Islands law (which would otherwise not be available in the Supreme Court). After all, the Government and the Union commenced their respective Virgin Islands Superior Court actions in 2011, and the Virgin Islands Supreme Court, in turn, did not render its own decision until November 2012. We find it improbable that H.R. 6116 was ever meant to strip this Court of certiorari jurisdiction when the enactment date of this legislation fell

right in the middle of the applicable time period for filing a certiorari petition with this Court.[6]

---

[6] Likewise, we must reject the Government's theory that the Union's approach to H.R. 6116 would result in both the Supreme Court and this Court possessing concurrent jurisdiction. On the contrary, "we retain certiorari jurisdiction over all cases 'commenced' before the President signed H.R. 6116," Kendall I, 716 F.3d at 88 (citation omitted), and we now conclude that such cases include proceedings commenced in the Virgin Islands courts before that date. In turn, the Supreme Court would not possess jurisdiction over such cases. For "cases commenced" on or after this date, the Supreme Court possesses exclusive certiorari jurisdiction.

We have also considered the various contentions regarding H.R. 6116 proffered by the Virgin Islands Supreme Court in its amicus curiae brief. However, we reject its critique of our interpretation of this federal statute. For instance, we purportedly "distinguished the Santos case by stating that, shortly thereafter, the U.S. Supreme Court, in [Hamdan], 'rejected the theory that jurisdiction-stripping provisions apply retroactively in the absence of an express reservation for pending cases,' and thus implicitly rejected the reasoning of Santos." (Amicus Curiae Brief at 20 (quoting UIW-SIU, 746 F.3d at 125).) According to the Virgin Islands Supreme Court, our reading of Hamdan is incorrect because the Supreme Court endorsed the reasoning in Santos in Limtiaco v. Camacho, 549 U.S. 482 (2007), a post-Hamdan proceeding from the Guam Supreme Court. However, it was the Kendall I Court that disposed of Santos based on the Supreme Court's ruling in Hamdan: "To the extent that Santos interprets Supreme Court precedent as holding that jurisdiction-stripping provisions automatically apply retroactively absent an express reservation of jurisdiction over pending cases, the Supreme Court subsequently rejected such an approach in Hamdan. See Hamdan, [548 U.S. at 584] (rejecting this 'inflexible' rule advanced by Justice Scalia's dissent and by the Government)." Kendall I, 716 F.3d at 87. We further explained in Kendall I that, "[m]ore importantly, the jurisdiction-stripping provision in Santos differs markedly from the one we confront here" because the Ninth Circuit "addressed a statute in which Congress was completely silent about the effective date of the jurisdiction-stripping provision." Id. (citing Santos, 436 F.3d at 1053). In contrast,

41

**B. Mootness**

Even though we thereby retain certiorari jurisdiction under H.R. 6116, we nevertheless must dismiss the certiorari petition as moot because of Bason's death.

Federal courts generally lack jurisdiction whenever """the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.""" McNair v. Synapse Group Inc., 672 F.3d 213, 224 n.11 (3d Cir. 2012) (quoting Merle v. United States, 351 F.3d 92, 94 (3d Cir. 2003)). The mootness determination implicates an intensely factual inquiry requiring the court to assess whether it could award meaningful relief despite changing circumstances. See, e.g., Int'l Bhd. of Boilermakers v. Kelly, 815 F.2d 912, 914-16 (3d Cir. 1987). "The mootness doctrine is centrally concerned with the court's ability to grant effective relief." County of Morris v. Nationalist Movement, 273 F.3d 527,

---

Congress used explicit language providing that "H.R. 6116's amendments apply only 'to cases commenced on or after the date of the enactment.'" Id. at 88. In any event, the Limtiaco Court did not address (or even mention) the existence of an express reservation rule for jurisdiction-stripping statutes (and, on the contrary, it addressed, inter alia, the distinct question of "whether the filing of a petition for certiorari or the pendency of a writ of certiorari before the Court of Appeals suspended the finality of the Guam Supreme Court's judgment for purposes of the 90-day period [to file a petition for certiorari with the Supreme Court] set out in [28 U.S.C.] § 2101(c))," Limtiaco, 549 U.S. at 487).

533 (3d Cir. 2001) (citing Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d Cir. 1996)). As the Union notes, an otherwise lawful order does not become moot merely because changes in circumstances indicate that the need for the order may be less then when it was originally entered. See, e.g., C-B Buick, Inc. v. NLRB, 506 F.2d 1087, 1093 (3d Cir. 1974). Additionally, voluntary compliance or cessation of the allegedly unlawful conduct on the part of the defendant generally does not render a case as moot. See, e.g., Already, LLC v. Nike, Inc., 133 S. Ct. 721, 727 (2013) (stating that party claiming voluntary compliance carries formidable burden of showing that it is absolutely clear that allegedly wrongful conduct could not reasonably be expected to recur); Dep't of Justice v. Fed. Labor Relations Auth., 991 F.2d 285, 289 (5th Cir. 1993) ("[Unfair labor practice] cases, however, generally do not become moot when the individual parties resolve the specific matter that gave rise to the dispute because the 'Board is entitled to have the resumption of the unfair practice barred by an enforcement decree.'" (quoting NLRB v. Raytheon Co., 398 U.S. 25, 27 (1970))). "Instead, the dismissal of an action on mootness grounds requires the defendant to demonstrate that 'there is no reasonable expectation that the wrong will be repeated.'" Sutton v. Rasheed, 323 F.3d 236, 248 (3d Cir. 2003) (quoting Northeastern Fla. Chapter of Assoc. Gen. Contractors of Am. v. City of Jacksonville, 508 U.S. 656, 662 (1993)). "[T]he 'capable of repetition yet evading review' doctrine permits consideration of a case that 'would otherwise be deemed moot' when '"(1) the challenged action is, in its duration, too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same

43

complaining party will be subject to the same action again."'" McNair, 672 F.3d at 224 n.11 (quoting Merle, 351 F.3d at 94).

We do not believe that the current certiorari proceeding falls under the "capable of repetition yet evading review" doctrine. According to the Union, H.R. 6116 forecloses review of Virgin Islands Supreme Court decisions on questions of Virgin Islands law, and any future reinstatement issue that may arise between the Union and the Government thereby will forever evade review. A statute stripping a federal circuit court of certiorari jurisdiction over final decisions of the highest court of a territory (and vesting the Supreme Court with certiorari jurisdiction at least with respect to questions of federal law) does not appear to represent the type of occurrence that could implicate this doctrine. In any event, we have already concluded that we retain certiorari jurisdiction with respect to proceedings that were filed in the Virgin Islands courts before H.R. 6116's date of enactment, including the proceedings filed by the Union and the Government in 2011. Furthermore, it is Bason's death that moots the current certiorari proceeding, and this unfortunate and seemingly unexpected occurrence does not render this case capable of repetition yet evading review. Cf., e.g., Compassion in Dying v. Washington, 79 F.3d 790, 796 n.4 (9th Cir. 1996) (en banc) ("We would think that a distinction could reasonably be drawn between the terminally ill, *all* of whom *necessarily* will die prior to completion of the litigation, and those whose cases become moot for more mundane or less predictable reasons."), rev'd

44

on other grounds sub nom. Washington v. Glucksberg, 521 U.S. 702 (1997).

The Union vigorously contends that it is the real party in interest here. For our part, we recognize that a labor union's interest may extend beyond merely protecting the rights of an allegedly injured employee and that it accordingly may have a right to advocate on behalf of other similarly situated members as well as the collective bargaining unit as a whole. In American Federation of Government Employees, Local 1941 v. Federal Labor Relations Authority, 837 F.2d 495 (D.C. Cir. 1988), a local of the American Federation of Government Employees ("AFGE") sought review of a decision of the Federal Labor Relations Authority ("FLRA"), holding "that the credentials committee of an Army hospital about to conduct a hearing to consider adverse information relating to the medical procedures and proficiency of a certified ophthalmologist employed at the hospital did not commit an unfair labor practice when it refused the employee's request to have his union representative with him at the hearing," id. at 496. Although the doctor resigned from his position and died a short time after the hospital commander had adopted the committee's recommendations to restrict his privileges, id. at 497, the D.C. Circuit allowed the union to pursue an unlawful labor practice action:

> This controversy is not mooted by Dr. Hanna's death. As exclusive representative of Dr. Hanna's bargaining unit, AFGE has a derivative right to be present, on the employee's request, at an examination reasonably believed by the

45

> employee potentially to result in disciplinary action. 5 U.S.C. § 7114(a)(2)(B). Thus the Union itself has standing to contest the denial of representation as an unfair employment practice. Available remedies may include a cease and desist order or the posting of an unfair labor practice notice. See, e.g., AFGE v. FLRA, 777 F.2d 751, 753 n.13 (D.C. Cir. 1985).

Id. at 497 n.2.; see also, e.g., Dep't of Justice v. FLRA, 144 F.3d 90, 91-96 (D.C. 1998) (rejecting INS's theory that union was not acting as exclusive representative at oral reply stage of disciplinary proceedings on grounds that union sought to vindicate employees' individual interests as well as bargaining unit's broader interest in proper administration of collective bargaining agreement and likewise rejecting union's request to sanction INS for pursuing appeal after its alleged destruction of certain documents because whether agency committed unfair labor practice in refusing to produce documents was unaffected by whether agency later destroyed such documents); AFGE, Local 3090, 777 F.2d at 753 n.13 ("This 'other action' may include the posting of a notice indicating that an agency has been found to have committed an unfair labor practice and that it has been ordered to cease committing such practices in the future. An order requiring the Home to post such a notice would of course afford [the union] an as yet unrealized remedy for the alleged unfair labor practice." (citation omitted)).

46

Furthermore, it is well established that, even though the death of a former employee may moot a reinstatement claim, a claim for back pay nevertheless survives his or her death. See, e.g., Scott v. Univ. of Del., 601 F.2d 76, 81 n.8 (3d Cir. 1979) ("We address the merits of Scott's individual [discrimination] claims because the claim for back pay and damages survives his death."); abrogated on other grounds, EF Operating Corp. v. United Mine Workers of Am., 993 F.2d 1046 (3d Cir. 1993); NLRB v. Atl. Towing Co., 179 F.2d 497, 498 (5th Cir. 1950) ("Since the issuance of said [NLRB] order [requiring reinstatement with full reimbursement], Hendrix has died, but this does not render the case moot because, if the court sustains the order, Hendrix's estate is entitled to be made whole for any loss of pay suffered by him").

Nevertheless, the current certiorari proceeding presents this Court with an unusual and even unique set of circumstances. In short, the Virgin Islands Supreme Court's order and opinion was entirely premised on the notion of reinstatement, and it would have dismissed the Government's appeal if the Virgin Islands Superior Court had never ordered Bason's immediate reinstatement. In its submission on mootness, the Union quotes the Virgin Islands Supreme Court's holding "'that section 113 of title 3 precluded the arbitrator and the Superior Court from mandating that the Government reinstate Bason as an Assistant Attorney General'" (Petitioner's Mootness Letter at 3 (quoting UIW-SIU, 2012 WL 5901921, at *5)) together with the statement that "'it is not clear to this Court how the provisions of [the CBA] which permit reinstatement by an arbitrator of an

47

Assistant Attorney General discharged without just cause can in any way be reconciled with the statutory enactment'" (id. at 3-4 (quoting UIW-SIU, 2012 WL 5901921, at *5)). Specifically, the Virgin Islands Supreme Court concluded that, "[s]ince the portion of the December 13, 2011 Opinion and Judgment mandating Bason's reinstatement constituted an appealable injunction, this Court possesses jurisdiction over that portion of the underlying order." UIW-SIU, 2012 WL 5901921, at *5. It then proceeded to reverse the Virgin Islands Superior Court's opinion and judgment to the extent that it directed the Government to reinstate Bason. However, the Virgin Islands Supreme Court also dismissed the appeal "with respect to all other issues" (A22) because it agreed with the Union that the parties' disagreement as to the calculation of back pay "precludes us from exercising jurisdiction," id. at *3 (citation omitted). On remand, the Virgin Islands Superior Court has not yet disposed of the claim for back pay.

Bason's death clearly moots any reinstatement claim on his behalf. See, e.g., Scott, 601 F.2d at 81 n.8 ("Insofar as Scott sought injunctive and declaratory relief compelling the University to reinstate him and renew his contract, these claims have been mooted by Scott's death."); Loveman, Joseph & Loeb v. NLRB, 146 F.2d 769, 772 (5th Cir. 1945) ("Furthermore, her death has rendered the question of her reinstatement moot."). Given the critical role that reinstatement played in the Virgin Islands Supreme Court's disposition, we do not see how we could reach the merits of its decision at this juncture. In other words, reinstatement represents the critical "hook" on which this entire certiorari proceeding rests, and, without it, ""'the parties lack a legally

48

cognizable interest in the outcome"'" of the certiorari proceeding itself. McNair, 672 F.3d at 224 n.11 (citation omitted). The proceeding thereby involves more than either changed circumstances indicating that the need for an order may be less than when it was first entered or voluntary compliance on the part of the Government. Likewise, this proceeding does not implicate, inter alia, the right of a union "to be present, on the employee's request, at an examination reasonably believed by the employee potentially to result in disciplinary action." AFGE, Local 1941, 837 F.2d at 497 n.2. While the issue of back pay may not be moot, this particular claim is not before us because the Virgin Islands Supreme Court concluded that it lacked appellate jurisdiction over this claim, which has yet to be decided by the Virgin Islands Superior Court. In fact, it appears that the Union (or Bason's estate) could continue to litigate the claim for back pay (and possibly other claims for relief given Bason's death) in the Virgin Islands courts. If the Union (or the estate or the Government) does not prevail before the Virgin Islands courts, it then could file a certiorari petition with us (and, as we have explained, H.R. 6116 would not strip us of jurisdiction over such a petition).

Therefore, we will dismiss the certiorari petition filed by the Union. In addition, we will vacate the Virgin Islands Supreme Court's order and opinion and will remand with instructions to the Virgin Islands Supreme Court to vacate the portions of the Virgin Islands Superior Court's judgment and opinion that addressed the issue of reinstatement. The Supreme Court has explained that "[t]he established practice of the Court in dealing with a civil case from a court in the

49

federal system which has become moot while on its way here or pending our decision on the merits is to reverse or vacate the judgment below and remand with a direction to dismiss." Munsingwear, 340 U.S. at 39 (footnote omitted). Accordingly, our normal practice is to vacate the district court judgment when a civil case becomes moot on appeal. See also, e.g., Lightner v. 1621 Route 22 W. Operating Co., 729 F.3d 235, 237 (3d Cir. 2013). While this proceeding does not come to us from a district court, we believe that this general rule applies with respect to our certiorari jurisdiction over decisions by the Virgin Islands Supreme Court. [7] Insofar as

---

[7] According to the Virgin Islands Supreme Court, this Court lack supervisory authority over the Virgin Islands judiciary, and the Munsingwear rule thereby does not apply in the present circumstances. As the Union points out, it appears that the Supreme Court has, on more than one occasion, vacated the underlying state court judgment (and remanded for further proceedings) after the case became moot. See DeFunis v. Odegaard, 416 U.S. 312, 320 (1974) ("Accordingly, the judgment of the Supreme Court of Washington is vacated, and the cause is remanded for such proceedings as by that court may be deemed appropriate."); Amalgamated Ass'n of Street, Elec. Ry. & Motor Coach Emps., Div. 998 v. Wis. Emp. Relations Bd., 340 U.S. 416, 418 (1951) ("It appearing that the cause has become moot, the judgment of the Supreme Court of Wisconsin is vacated without costs and the cause is remanded for such proceedings as by that court may be deemed appropriate."); see also, e.g., Massachusetts v. Oakes, 491 U.S. 576, 585 (1989) (plurality opinion) ("When the sole question on which we granted

50

certiorari has become moot, our usual course, in cases coming to us from state courts when part of the dispute remains alive, is to vacate the judgment below and remand for further proceedings." (citing DeFunis, 416 U.S. at 584)).

However, we need not—and do not—decide the specific question of whether the <u>Munsingwear</u> rule generally applies in the state court context. In short, our relationship with the Virgin Islands Supreme Court differs from the relationship that exists between the Supreme Court and state courts. "Our Court has had a significant role in overseeing the Virgin Islands Supreme Court." <u>Defoe</u>, 702 F.3d at 742 (citing § 1613; <u>Pichardo</u>, 613 F.3d at 100 n.11). Under the pre-amended version of § 1613, the relations between this Court and the Virgin Islands judiciary "shall be governed by the laws of the United States pertaining to the relations between the courts of the United States, including the Supreme Court of the United States, and the courts of the several States"—with one major exception—"*Provided,* That for the first fifteen years following the establishment of the appellate court authorized by section 1611(a) of this title, the United States Court of Appeals for the Third Circuit shall have jurisdiction to review by writ of certiorari all final decisions of the highest court of the Virgin Islands from which a decision could be had."  While H.R. 6116 may have stricken this certiorari jurisdiction language, he have already concluded in this opinion that we retain certiorari jurisdiction over proceedings that were filed in the Virgin Islands courts before the date of enactment of H.R. 6116.  Unlike the Supreme Court, our certiorari jurisdiction is not limited to questions of federal law, and we thereby retain jurisdiction over questions of Virgin Islands law. <u>See, e.g.</u>, <u>Defoe</u>, 702 F.3d at 743. "In other words, the [Virgin Islands] Supreme Court has assumed our erstwhile role as a final authority on territorial law, though with an important limitation:  its

52

Bason's death prevents us from considering the merits of the Virgin Islands Supreme Court's decision, we will "clear[] the path" for future relitigation of the issues between the parties, eliminate a judgment that could not be reviewed due to happenstance, and ensure that the parties are "not prejudiced by a decision which in the statutory scheme was only preliminary." Munsingwear, 340 U.S. at 40.

III.

decisions must not be manifestly erroneous or inescapably wrong." Id. Given our special relationship with the Virgin Islands Supreme Court, we believe that it is appropriate to clear the proverbial path for future relitigation and eliminate a judgment that has become unreviewable by mere happenstance. See, e.g., Munsingwear, 340 U.S. at 40. In fact, it appears that a failure to take such a step would unfairly prejudice the Union itself, which—but for Bason's untimely death—would have evidently obtained review on the merits of the Virgin Islands Supreme Court's decision in this certiorari proceeding. See, e.g., Camreta, 131 S. Ct. at 2035-36 ("In this case, the happenstance of S.G.'s moving across country and becoming an adult has deprived Camreta of his appeal rights. Mootness has frustrated his ability to challenge the Court of Appeals' ruling that he must obtain a warrant before interviewing a suspected child abuse victim at school. We therefore vacate the part of the Ninth Circuit's opinion that addressed that issue, and remand for further proceedings consistent with this opinion." (footnote omitted) (citations omitted)).

For the foregoing reasons, we will dismiss the Union's certiorari petition as moot. We also will vacate the Virgin Islands Supreme Court's order and opinion and will remand with instructions to the Virgin Islands Supreme Court to vacate the portions of the Virgin Islands Superior Court's judgment and opinion that addressed the issue of reinstatement.